**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 13 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

vs.

ARTURO BENCOMO-CASTILLO,
also known as Rigoberto Castillo-
Marquez, also known as Juan Castello-
Sotelo,

      Defendant-Appellant.

No. 98-2126

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-97-397-LH)

---

Jerry A. Walz, Walz & Associates, Albuquerque, New Mexico, for the Defendant-Appellant.

Laura Fashing, Special Assistant United States Attorney (John J. Kelly, United States Attorney, with her on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for the Plaintiff-Appellee.

---

Before **KELLY**, **McKAY**, and **HENRY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

      Defendant-Appellant Arturo Bencomo-Castillo pled guilty to an indictment

charging that he entered, attempted to enter, or was at any time found in the United States without the Attorney General's consent after having been deported, in violation of 8 U.S.C. § 1326. Mr. Bencomo-Castillo had previously been convicted of theft warranting at least one year's imprisonment – an offense considered an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G), as of September 30, 1996. In his earlier motion to quash the indictment, which was denied, he challenged the government's ability to charge him with being an aggravated felon under § 1326(b)(2), claiming he was "found" in the United States before this date. Although he had an offense level of twenty-one with a criminal history category V, the parties entered a plea agreement, providing that the offense level would be seventeen and Mr. Bencomo-Castillo could argue, at sentencing, that he had a prior felony conviction under § 1326(b)(1), rather than an *aggravated* felony conviction under §1326(b)(2). The plea agreement also preserved this issue for appeal. After holding an evidentiary hearing on applicability of § 1326(b)(2), the court determined Mr. Bencomo-Castillo's sentence with reference to USSG § 2L1.2(b)(1)(A), which provides a sixteen-level enhancement if the deportation occurred subsequent to an aggravated felony conviction as defined by § 1101(a)(43)(G). He was sentenced to fifty-two months' imprisonment and three years' supervised release.

According to Mr. Bencomo-Castillo, the court incorrectly construed §§

1326(a)(2) & (b)(2) in calculating the enhancement because he was arrested in Albuquerque, New Mexico, on March 23, 1996 – after his deportation but before the amended definition of an aggravated felony in § 1101(a)(43)(G) took effect. He contends that the INS had constructive knowledge of his presence in the United States that spring; thus, he was "found" before September 30, 1996 and his prior theft should not have been deemed an aggravated felony for sentencing purposes. We exercise jurisdiction under 28 U.S.C. §§ 1291 and 18 U.S.C. § 3742(a) and affirm.

Background

The parties agree that Mr. Bencomo-Castillo was deported on November 30, 1995, after being convicted in state court of unlawfully taking a motor vehicle, for which he received an eighteen-month sentence. According to the undisputed facts, he reentered the United States and was arrested in Albuquerque on March 23, 1996. Mr. Bencomo-Castillo gave the police an alias, "Arturo Marquez-Castillo" – one of more than thirty false names he used during his criminal activities. See 4 R. at 63. He spent that Saturday night in the Bernalillo County Detention Center and was released the following day. Because the INS does not perform jail checks on weekends, his deportation status was not discovered. However, the Albuquerque Police Department took his fingerprints

and, on May 15, 1996, submitted them to the FBI.  The fingerprints were not processed until March 11, 1997.

Defense counsel asserts that an earlier arrest on February 29, 1996, was discovered after the district court ruled on Mr. Bencomo-Castillo's motion to quash the indictment.  The parties do not agree on whether the police took his fingerprints during the February 1996 arrest.  Yet, they do agree that Mr. Becomo-Castillo was arrested again on February 27, 1997, and that on June 5, 1997, while he was still in custody, an INS agent identified him as a previously deported alien.

Discussion

If the district court's application of the sentencing guidelines involves a question of law, we review de novo.  See United States v. Tagore, 158 F.3d 1124, 1127 (10th Cir. 1998).  We review its factual findings for clear error.  See id. This case presents an issue of first impression in the Tenth Circuit:  whether an alien arrested under an alias and not discovered to be a prior deportee has been "found" within the meaning of § 1326.  Section 1326 applies to any previously deported alien who "enters, attempts to enter, or *is at any time found* in, the United States" without the Attorney General's consent.  § 1326(a)(2) (emphasis added).  Section 1326(b)(2) authorizes not more than twenty years' imprisonment

for an alien described in § 1326(a) "whose removal was subsequent to a conviction for commission of an aggravated felony." The meaning of the word "found" in § 1326 thus lies at the heart of this case.

In United States v. Meraz-Valeta, 26 F.3d 992, 997 (10th Cir. 1994), we adopted the Second Circuit's view that the "found in" language of § 1326(a) is synonymous with "discovered in." Id. (citing United States v. Whittaker, 999 F.2d 38, 42 (2d Cir. 1993)); see also United States v. Gomez, 38 F.3d 1031, 1036 (8th Cir. 1994) (noting that this is the prevailing interpretation). In Whittaker, the Second Circuit stated that an alien who gave an alias upon reentering the United States at an official checkpoint had not been "found" because:

> His documentation, although containing his photograph, used a fictitious name. There was, thus, no way the INS could have identified him as a previously deported alien at the time of his reentry. That is the precise situation Congress sought to cover when, in 1972, it amended the Statute to cover aliens who were found in the United States following their illegal entry.

Whittaker, 999 F.2d at 42. Other circuits have agreed that, for an alien to be "found," the government must have "knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities." United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996); see United States v. Rivera-Ventura, 72 F.3d 277, 281-82 (2d Cir. 1995).

Although the government lacked actual knowledge that Mr. Bencomo-Castillo was a previously deported alien before June 5, 1997, he contends that the

INS had constructive knowledge in the spring of 1996.  First, he asserts, it was unreasonable for the INS not to perform weekend jail checks.  Second, he charges the FBI with negligence in failing to process his fingerprints for almost a year.

Neither the plain language of the statute nor the relevant case law suggests that the "found in" element of § 1326(a) requires the government to exercise more than reasonable diligence in screening for previously deported aliens.  See Santana-Castellano, 74 F.3d at 598.  Mr. Bencomo-Castillo cites Gomez for the proposition that the INS and the FBI negligently failed to discover his status from his fingerprints; yet, Gomez does not govern the outcome of his case.  In attempting to determine whether a § 1326 indictment was brought within the applicable statute of limitations, the Gomez court suggested *but did not hold* that the government negligently failed to find an alien.  See Gomez, 38 F.3d at 1038.  Even if the Eighth Circuit had established a threshold for reasonable diligence in Gomez, we would not be bound by it.  See Abeyta v. Chama Valley Indep. Sch. Dist., 77 F.3d 1253, 1257 (10th Cir. 1996).  Many of the other cases that Mr. Bencomo-Castillo cites deal with the irrelevant issue of whether an alien must evade an official checkpoint in order to be "found," rather than merely entering the United States.  See, e.g., United States v. DiSantillo, 615 F.2d 128, 137 (3d Cir. 1980).

In the instant case, the government had neither constructive nor actual

knowledge of Mr. Bencomo-Castillo's prior deportation until after September 30, 1996. INS agents only perform jail checks Monday through Friday and are not required to research the criminal history of persons who have been released from custody. See 4 R. at 32. Even if an INS agent had performed a weekend jail check on or around March 23, 1996, he probably would not have discovered Mr. Bencomo-Castillo's status because Mr. Bencomo-Castillo used an alias. See id. at 11. Agents cannot discover information about an alien giving a false name unless they check multiple computer indexes, including the Deportable Alien Control System ("DACS") and the National Crime Information Center ("NCIC"). See id. at 11, 23, 24. These systems are not checked during a routine screening unless the officer recognizes an alien as a prior deportee. See id. at 12, 20. Moreover, if the alien uses a new alias, the NCIC will not yield any information about him. See id. at 49. Based on such evidence, the district court did not clearly err in finding that the INS did not identify Mr. Bencomo-Castillo as a deported alien before June 5, 1997. We also hold that INS agents had no legal duty under § 1326 to conduct a more exhaustive investigation of his criminal history.

Finally, Mr. Bencomo-Castillo charges the government with negligence due to its delay in processing his fingerprints. If the FBI had checked the prints in the usual forty-five to ninety days, see id. at 30, Mr. Bencomo-Castillo asserts, he would have been "found" before September 30, 1996. Instead, it took almost a

year to process them. However, even if the FBI had contacted the INS in ninety days, Mr. Bencomo-Castillo still would not have been "found" because the INS no longer knew his whereabouts. Although the government must exercise "diligence typical of law enforcement authorities" to find prior deportees, Santana-Castellano, 74 F.3d at 598, we decline to second-guess the FBI's priorities in processing suspects' fingerprints. Accordingly, we hold that Mr. Bencomo-Castillo was not "found" in the United States until June 1997, after the amended definition of aggravated felony took effect, and the district court properly enhanced his sentence.

AFFIRMED.