**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darius HERRERA–ORDONES,
Defendant–Appellant.**

**No. 98–3261.**

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1999.

Decided Aug. 19, 1999.

Judith A. Stewart (argued), Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Steven J. Riggs (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for Defendant–Appellant.

Before RIPPLE, ROVNER and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

In 1994, Darius Herrera–Ordones was deported from the United States after he had been convicted of several drug offenses. He later reentered the United States without permission and remained here illegally. In 1997, he was convicted for being an alien found in the United States after deportation and illegal reentry. See 8 U.S.C. § 1326(a), (b)(2). At a bench trial, Mr. Herrera–Ordones stipulated to all the essential facts and to the essential elements of the crime. The only issue he contested at trial was whether venue was proper in the Southern District of Indiana. The district court held that venue was proper in the Southern District. It then found Mr. Herrera–Ordones guilty of the charge of illegal reentry and sentenced him to 96 months of imprisonment.[1] On appeal, Mr. Herrera–Ordones challenges the district court's venue determination and its denial of a two-level reduction for acceptance of responsibility under § 3E1.1 of the United States Sentencing Guidelines. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

The parties have stipulated to these facts. Darius Herrera–Ordones is an alien of Mexican heritage who first entered the United States illegally sometime before September 1988. Under various aliases, he was convicted in the state of Washington three times between June 1989 and May 1992 for drug offenses. The Immigration and Naturalization Service ("INS") authorities instituted deportation proceedings against him while he was serving his sentence and deported him as an aggravated felon on June 18, 1994.

Sometime within the following two years, Mr. Herrera–Ordones reentered the United States illegally. On September 21, 1996, he was arrested in Elkhart, Indiana, and jailed on a felony battery charge for beating up his girlfriend. The alias he gave police was "Jose Rendon." He had falsified his birth date and social security number, as well. On January 27, 1997, INS Special Agent Ray Pachciarz interviewed the defendant at the Elkhart County Jail. Mr. Herrera–Ordones gave the agent another false name ("Jose Aldelberto Rendon–Contreras"), false social security number, and false place of entry into the United States. He also falsely stated that he had no prior immigration record. The agent attempted to locate any other INS files under that name. In mid-February, he obtained a file—but for a different

---

1. The sentencing court also imposed on Mr. Herrera–Ordones a term of three years of supervised release and ordered him to pay a $1,000 fine and a $100 special assessment fee.

person, not for the man in the Elkhart County Jail.

On February 5, 1997, Agent Pachciarz filed an Immigration Detainer for Jose Rendon, a/k/a Jose Rendon–Contreras, a/k/a Manuel Rendon. The detainer advised the Elkhart County Sheriff that the INS had initiated an investigation to determine whether the person they believed to be Jose Rendon was subject to deportation from the United States. The detainer requested that the sheriff notify the INS prior to Rendon's (Mr. Herrera–Ordones's) release. The INS agent continued to check records to determine the identity of Jose Adelberto Rendon–Contreras and his prior immigration or criminal record, if any.

Sometime during February or March 1997, the case was transferred to another INS Special Agent, Brian Johnson. In mid-March 1997, the INS received from the Elkhart County Sheriff a two-page FBI document. It contained a fingerprint analysis which stated that the fingerprints of Jose Rendon were identical to those of Juan Carlos Guzman Gorrea, a person with a prior criminal record with the FBI. The FBI report also reported Gorrea's criminal history from the state·of Washington and listed seven aliases he used—three of which were "Darius Herrera," "Darius Herreraordones" and "Darius H. Ordones." The report did not indicate there was a previous deportation. Agent Johnson started checking INS files for information on any of those aliases. At the same time, on March 14, 1997, Mr. Herrera–Ordones was convicted, under the name Jose Rendon, in Elkhart County, Indiana, of felony battery and was sentenced to eight years of imprisonment with four years suspended. Following its usual procedure, within the next two weeks the Indiana Department of Corrections ("DOC") transferred Mr. Herrera–Ordones from the Elkhart County Jail (in the Northern District of Indiana) to the Indiana Reception and Diagnostic Center ("RDC") in Plainfield, ·Indiana (in the Southern District of Indiana) for placement diagnosis.

By the end of March, Agent Johnson had obtained the conviction records for Juan Carlos Gorrea, the name under which Mr. Herrera–Ordones was convicted for delivery of heroin in 1992 and deported in 1994. On April 9, 1997, Agent Johnson also had received a file on Darius Herrera–Ordones from the Seattle, Washington INS office. From that file, Agent Johnson learned that Mr. Herrera–Ordones had been deported as an aggravated felon in June 1994.

Just a week before receiving that file, on April 1, 1997, Agent Johnson had interviewed Mr. Herrera–Ordones at the RDC. Mr. Herrera–Ordones again gave his false name, Jose Rendon Contreras, but this time admitted that he had previously been deported and had reentered the United States illegally near Brownsville, Texas, in approximately April 1996. Agent Johnson advised him that he was subject to deportation and possibly to prosecution for his illegal reentry after deportation. Following that interview, Agent Johnson completed his investigation by obtaining all previous criminal and deportation records regarding Mr. Herrera–Ordones and obtaining fingerprint analysis to determine if the person in custody known as Jose Rendon was the same person who had previously been deported as Darius Herrera–Ordones in 1994.

On April 19, 1997, Agent Johnson received a fingerprint examiner's opinion that the fingerprints Agent Johnson had submitted for Jose Aldelberto Rendon, Jose Rendon–Contreras and Darius Herrera–Ordones all belonged to the same person. On August 13, 1997, the INS filed a complaint charging Mr. Herrera–Ordones with one count of violating 8 U.S.C. § 1326(a) and (b)(2) [2] by being an alien

---

**2.** Section 1326, "Reentry of Removed Alien," sets forth the criminal penalties for aliens

who were deported and reentered the United

who reentered without permission and was found in the United States after deportation for an aggravated felony conviction.

### B. Determinations of the District Court

Mr. Herrera–Ordones stipulated to the essential elements of 8 U.S.C. § 1326:

(1) On the date charged in the indictment, he was an alien;

(2) he had been arrested and deported from the United States on or about June 18, 1994, through the port of Otay Mesa, California;

(3) his deportation was subsequent to a conviction for the commission of an aggravated felony, delivery of heroin, in the State of Washington in 1992;

(4) after his deportation, he was found in the United States;

and

(5) the Attorney General of the United States had not expressly consented to his reapplying for admission to the United States.

The court, by bench trial, accepted the stipulations of fact, stipulated exhibits and stipulated elements of the crime that the government was required to prove beyond a reasonable doubt. The only issue Mr. Herrera–Ordones contested at trial was venue. Mr. Herrera–Ordones asserted that he was "found in" the Northern District of Indiana because his presence there

was known to law enforcement and to the INS. According to the defendant, prosecution should have been instituted there instead of in the Southern District of Indiana. However, the court found that the evidence showed that the INS did not confirm Mr. Herrera–Ordones' true identity or status until after the state officials had transported him to the Southern District. The court held that venue in the Southern District therefore was proper and ruled that Mr. Herrera–Ordones was guilty of the charge of violating 8 U.S.C. § 1326.·

At sentencing, the district court denied Mr. Herrera–Ordones a § 3E1.1 downward adjustment for acceptance of responsibility under the Sentencing Guidelines. It found that he had not demonstrated a moral acceptance of responsibility; in fact, the court noted, he had merely stated that he was sorry he got caught. The court stated that Mr. Herrera–Ordones had a life-long history of crime in the United States, that he had used aliases repeatedly and had lied about his true identity, and that he had not cooperated with the probation office investigation. The court imposed sentence, without the downward departure for acceptance of responsibility, on the grounds that he had entered this country illegally twice, had continually committed crimes while in the United States and had no apparent legal means of support while in this country. This appeal followed.

States without permission. It states, in pertinent part:

(a) Subject to subsection (b) of this section, any alien who—

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect

to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent . . . ,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

. . .

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both.

8 U.S.C. § 1326(a), (b)(2).

## II

## DISCUSSION

### A. Venue

■ Mr. Herrera–Ordones challenged venue in his probable cause hearing, in a motion to dismiss the indictment, and at trial. At each step the challenge was denied, and venue in the Southern District of Indiana was held to be proper. The venue statute governing prosecutions brought under § 1326 is found at 8 U.S.C. § 1329. It states that venue is proper "at any place in the United States at which the violation may occur or at which the person charged ... may be apprehended."[3] The government must establish, by a preponderance of the evidence, that venue was proper by showing that the offense occurred in the district in which it was brought. We, in turn, review a venue decision by considering " 'whether, viewing the evidence in the light most favorable to the government, ... the government proved by a preponderance of the evidence that the crimes occurred' " in the district charged. *United States v. Brandon*, 50 F.3d 464, 469 (7th Cir.1995) (quoting *United States v. Males*, 715 F.2d 568, 569 (11th Cir.1983)); *see also United States v. Sax*, 39 F.3d 1380, 1390 (7th Cir.1994).

■ The offense at issue is the crime of illegal reentry into the United States after deportation and without the Attorney General's consent, in violation of 8 U.S.C. § 1326. Subsection (a)(2) provides that a previously deported alien commits the offense of illegal reentry in any of three ways: He or she (1) enters the United States, (2) attempts to enter the United States, or (3) is at any time found in the United States. In this case, the question we must answer is where Mr. Herrera–Ordones committed the § 1326 offense of being a previously deported alien "found in" the United States—in the Northern or Southern District of Indiana.

#### 1.

Mr. Herrera–Ordones insists that he was "found in" the Northern District of Indiana, actually in the Elkhart County Jail. He offers three exhibits in the record that demonstrate his claim: (1) The state probation report showed that the INS knew that Rendon was not Mr. Herrera–Ordones' real name; (2) the March 14, 1997, judgment from Elkhart Superior Court noted the lies that Rendon made; and (3) the FBI report of March 13, 1997, identified Rendon with the aliases Gorrea, Herrera and Herrera–Ordones. Therefore, Mr. Herrera–Ordones contends, he was known to immigration authorities and was "found" by the INS in Elkhart County prior to his transfer to the Southern District. Because he was "found in" the Elkhart County Jail and therefore violated § 1326 in the Northern District of Indiana, he contends that venue was improper in the Southern District of Indiana. The government, in response, points out that Mr. Herrera–Ordones was at the Indiana RDC in Plainfield, Indiana, in the Southern District, when the INS discovered his true identity and determined his status as an alien previously deported after an aggravated felony conviction. For that reason, it asserts, venue was proper in the Southern District.

The district court determined that Mr. Herrera–Ordones was "found in" the Southern District of Indiana, for purposes of venue under 8 U.S.C. § 1326, because

---

3. Section 1329 of Title 8, "Jurisdiction of district courts," in pertinent part states:

The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter. It shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States. Notwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended.

8 U.S.C. § 1329.

he was in the Southern District when (1) he admitted to the INS agent (at the April 1, 1997 interview) that he had previously been deported and (2) the INS agents learned (later in April) that he was Mr. Herrera–Ordones, not Rendon or another alias. The court noted that the INS knew of Rendon's (Mr. Herrera–Ordones') presence in the United States while he was in the Elkhart County Jail, but did not yet know that he had been deported and had reentered the country. According to the district court, the crime of "being found" was complete at the time Mr. Herrera–Ordones was "discovered" by the INS authorities, and the earliest date of discovery was April 1, 1997, the day that Mr. Herrera–Ordones admitted to an INS agent that he had previously been deported— information that was a necessary predicate to a prosecution under § 1326. After that interview, the INS agent obtained the file on Mr. Herrera–Ordones, which contained his deportation record, and the fingerprint analysis, which established that the person in custody was in fact Mr. Herrera–Ordones, a previously deported alien. Therefore, the district court held, venue in the Southern District of Indiana was proper.

## 2.

 The question of what constitutes being "found" under 8 U.S.C. § 1326 is a matter of first impression in this court, but we have the benefit of well reasoned opinions on this issue from our sister circuits. The prevailing view of those courts is that being "found" means being "discovered" in the United States, and it has two components: First, the INS discovers the physical presence of the deported alien, and second, it ascertains the alien's identity (as an illegal alien) and status (as one who has reentered after previous deportation). *See United States v. Bencomo Castillo*, 176 F.3d 1300, 1303 (10th Cir.1999); *United States v. Diaz–Diaz*, 135 F.3d 572, 577 (8th Cir.1998); *United States v. Asibor*, 109 F.3d 1023, 1031–32 (5th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 254, 139 L.Ed.2d 182 (1997); *United States v. Riv-*

*era Ventura*, 72 F.3d 277, 282 (2d Cir. 1995); *United States v. Gomez*, 38 F.3d 1031, 1036 (8th Cir.1994). When an alien reenters the country by using an alias, or uses false identification when his illegal presence in the United States is discovered, he is not identifiable and hence not "found." *See Bencomo–Castillo*, 176 F.3d at 1303 (citing *United States v. Whittaker*, 999 F.2d 38, 42 (2d Cir.1993)). We are in complete agreement with this assessment of the offense and conclude that an alien is "found" within the meaning of § 1326 when the INS both discovers his presence in the United States and knows that, because of his identity and status, his presence here is illegal. Under this analysis, Mr. Herrera–Ordones was found in the Southern District of Indiana.

Mr. Herrera–Ordones also submits that, even if the INS agents did not have actual knowledge, they had constructive knowledge that he was a previously deported alien while he was in the Northern District of Indiana. They knew by March 1997, while he was still in the Elkhart County Jail, he claims, that "Jose Rendon" had given the police false information and had many aliases, including various configurations of the name "Herrera–Ordones."

The Tenth Circuit, in *United States v. Bencomo Castillo*, 176 F.3d 1300 (10th Cir. 1999), recently considered whether an alien who was arrested under an alias was considered "found" once the INS should have discovered that the alien was a prior deportee. According to the defendant, the INS would have known his status if it had performed weekend jail checks or had processed his fingerprints earlier. The Tenth Circuit agreed that immigration authorities should exercise the level of diligence that is typical of law enforcement authorities when investigating whether the presence of an alien is illegal. *See Bencomo Castillo*, 176 F.3d at 1303; *see also United States v. Santana–Castellano*, 74 F.3d 593, 598 (5th Cir.), *cert. denied*, 517 U.S. 1228, 116 S.Ct. 1865, 134 L.Ed.2d 963 (1996);

*Rivera Ventura*, 72 F.3d at 281–82; *Gomez*, 38 F.3d at 1037–38. However, it rejected the alien's argument that the INS in his case negligently failed to discover his status. "Neither the plain language of the statute nor the relevant case law suggests that the 'found in' element of § 1326(a) requires the government to exercise more than reasonable diligence in screening for previously deported aliens." *Bencomo Castillo*, 176 F.3d at 1303.

In the case before us, the record demonstrates that the INS agents investigated Mr. Herrera–Ordones' identity and status with appropriate methodical diligence after learning of his presence in the Elkhart County Jail. The district court made an explicit finding "that no INS official in Indiana either knew or should have known of Mr. Herrera–Ordones' true identity or prior deportation earlier than April 1, 1997, when he finally admitted that fact." R.44 at 49. The court refused to determine venue based on what the INS agents "might have been able to determine if they had been acting with greater speed in treating this as the only matter they had before them." *Id.* at 50. The record fully supports this finding of fact. Moreover, when we consider the amount of false information Mr. Herrera–Ordones gave the immigration agents, we believe the district court was correct in finding that the INS officials could not have known Mr. Herrera–Ordones' identity before April 1, 1997, the date on which he gave the agents the truthful information that he had been deported earlier. At that time, Mr. Herrera–Ordones was in Southern Indiana; therefore, his prosecution in that venue was proper.

■ Mr. Herrera–Ordones submits one more claim. He asserts that, because he was in the Southern District of Indiana involuntarily, by prison transfer, the government lacks sufficient venue to prosecute him there. The district court stated that it did "not believe the defendant's presence in the specific district where he is charged needs to be a voluntary presence in that district." R.44 at 48.

■ In our view, whether an alien was in a particular location by choice has no relevance in venue determinations. Venue is proper anywhere in the United States, wherever the previously deported and reentered alien is "found." *See* 8 U.S.C. § 1329. Other courts have rejected the defendant's argument. *See United States v. Ortiz–Villegas*, 49 F.3d 1435, 1437 (9th Cir.) (holding that an "alien who has been deported and voluntarily reenters the United States without authorization has the intent required to support a conviction for being 'found in' the United States" even when he is involuntarily incarcerated when he was located), *cert. denied*, 516 U.S. 845, 116 S.Ct. 134, 133 L.Ed.2d 82 (1995); *United States v. Mancebo–Santiago*, 886 F.Supp. 372, 374–75 (S.D.N.Y.1995) (finding that venue is proper wherever the defendant was located, even if his presence was involuntary). We reject it as well.

**B. Acceptance of Responsibility: U.S.S.G. § 3E1.1**

■ Mr. Herrera–Ordones stipulated that he lied to INS agents at least twice during their investigation, refused to make a statement for the presentence report concerning his version of the offense, and in fact gave untruthful or incomplete information to the probation officer writing the PSR. As we chronicled above, the court denied Mr. Herrera–Ordones a downward adjustment under § 3E1.1 on the grounds that he had not demonstrated a moral acceptance of responsibility and had not cooperated with the probation officer's investigation. The court also noted that the defendant had entered the country illegally twice, had a long and continuous history of serious crime in the United States, under many aliases, and had no apparent legal means of support. We review a sentencing court's acceptance of responsibility determinations, which are factual findings, for clear error. *See United States v. Cunningham*, 103 F.3d 596,

598 (7th Cir.1996); *United States v. Thompson*, 76 F.3d 166, 170 (7th Cir.1996). We give due deference to the court's application of the Sentencing Guidelines to the facts, but we review de novo questions of law involving the interpretation of a guideline provision. *See United States v. Purchess*, 107 F.3d 1261, 1265–66 (7th Cir. 1997).

 In his challenge of the district court's denial of an acceptance of responsibility decrease, Mr. Herrera–Ordones bears the burden of demonstrating that he is entitled to this reduction. *See United States v. Fiore*, 178 F.3d 917, 925 (7th Cir.1999); *Purchess*, 107 F.3d at 1266. He contends that he was indeed entitled to a 2–point reduction in his base offense level under § 3E1.1 because he admitted all the essential facts proving his guilt and all the elements of § 1326, the charging statute. He also waived his right to a jury, agreed to a bench trial three weeks before trial, and contested only the legal issue of venue—a legal claim that should not disqualify him from a § 3E1.1 adjustment.

 The requirements for an acceptance of responsibility reduction are set forth in § 3E1.1 of the Sentencing Guidelines.[4] A defendant who "clearly demonstrates acceptance of responsibility for his offense" is given a two-level reduction; one who takes other cooperative steps with the government and satisfies other factors qualifies for another one-level reduction. Normally this reduction is granted to a defendant who pleads guilty. However, "in rare situations," a defendant may demonstrate that he has accepted responsibility for his conduct, even when going to trial, if, for instance, he does so "to assert and preserve issues that do not relate to factual guilt." U.S.S.G. § 3E1.1, cmt. (n.2) (stating that a trial conviction "does not automatically preclude a defendant from consideration" for a reduction under § 3E1.1); *see also United States v. Szarwark*, 168 F.3d 993, 996 (7th Cir.1999). A defendant who exercises his right to trial may qualify for the reduction as long as his pre-trial statements and conduct reflect his acceptance of responsibility.

 The district court expressly stated that it did not deny the reduction because Mr. Herrera–Ordones went to trial. Instead, the court based its determination on Mr. Herrera–Ordones' failure to demonstrate a moral acceptance of responsibility. It is entirely appropriate that a district court weigh Mr. Herrera–Ordones' plea for clemency and his statement nominally accepting culpability along with his other statements and his demeanor in deciding whether he "manifested an acceptance of responsibility for his offense in a moral sense." *United States v. Fiore*, 178 F.3d at 925; see also *United States v. Zaragoza*, 123 F.3d 472, 480 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 317, 139 L.Ed.2d 245 (1997); *Purchess*, 107 F.3d at 1269. The district court also based its determination on Mr. Herrera–Ordones' presentencing conduct. The court is permitted to take into account a defendant's lack of cooperation with the probation department. *See United States v. Beal*, 960

---

4. The "Acceptance of Responsibility" guideline states:

 (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

 (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

 (1) timely providing complete information to the government concerning his own involvement in the offense; or

 (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

 decrease the offense level by 1 additional level.

 U.S.S.G. § 3E1.1.

F.2d 629, 631 (7th Cir.), *cert. denied,* 506 U.S. 880, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992); *United States v. Fonner,* 920 F.2d 1330, 1335 (7th Cir.1990).

█ Our review of the record confirms that the district court's denial of the reduction for acceptance of responsibility was well grounded in permissible factors. Whether a defendant has failed to accept responsibility is a question of fact uniquely suited to the district court, which can weigh the defendant's demeanor as well as his reasons for seeking the reduction. The factual conclusions reached by the district court in this case clearly support the determination that Mr. Herrera–Ordones did not deserve a reduction for accepting responsibility for his conduct. *See United States v. Ricketts,* 146 F.3d 492, 499 (7th Cir.1998). Therefore, there was no error in the district court's refusal to grant the reduction for acceptance of responsibility.

### Conclusion

Because the district court did not clearly err in determining that the INS agents "found" Mr. Herrera–Ordones, within the meaning of 8 U.S.C. § 1326, in the Southern District of Indiana, we hold that the court correctly concluded that venue was proper in the Southern District. The district court also committed no error in refusing to grant the defendant a § 3E1.1 reduction for acceptance of responsibility. For the reasons set forth in this opinion, therefore, we affirm the judgment of the district court.

AFFIRMED.