**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 15 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROBERTO ROSALES-GARAY,

    Defendant-Appellant.

No. 01-1017

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 00-CR-374-B)**

---

Andrew Vogt, Assistant United States Attorney (Richard T. Spriggs, United States Attorney, and Sean Connelly, Assistant United States Attorney, on the brief), Denver, Colorado, for Plaintiff-Appellee.

Lynn Hartfield, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, and Charles Szekely, Assistant Federal Public Defender, on the brief), Denver, Colorado, for Defendant-Appellant.

---

Before **TACHA**, Chief Judge, and **BALDOCK** and **HENRY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

Defendant Roberto Rosales-Garay pled guilty in federal district court to one count of "Unlawful Re-entry of a Deported Alien" in violation of 8 U.S.C. § 1326(a). Section 1326(a) generally provides that a previously deported alien who, without permission, "enters, attempts to enter, or is at any time found in, the United States" is guilty of the crime of unlawful reentry. Id. (emphasis added). According to the indictment and plea agreement, the United States deported Defendant in August 1995, after the State of California had convicted him of an aggravated felony drug offense. Then, "on or about" August 1, 2000, immigration officials "found" Defendant in Aurora, Colorado, and arrested him.

Because Defendant was on probation for a Colorado state "Driving While Ability Impaired" (DWAI) misdemeanor conviction at the time of his August 1, 2000 arrest,[1] see Colo. Rev. Stat. § 42-4-1301, the presentence report recommended that the district court, pursuant to U.S.S.G. § 4A1.1(d), add two criminal history points in calculating Defendant's criminal history. Guidelines § 4A1.1(d) directs the district court to add two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation . . . ." Defendant objected to the report, arguing that his § 1326(a) offense was a "status" offense which occurred on the date he reentered the United States, and thus before his DWAI offense. The

---

[1] On April 29, 2000, Defendant pled guilty to the DWAI charge in Jefferson County Court, Golden, Colorado. On June 22, 2000, the same court sentenced Defendant to one year probation.

2

district court rejected Defendant's argument and added two criminal history points to a previous five to reach a criminal history category of IV. This, together with Defendant's undisputed offense level of 21, yielded a guideline sentencing range of 57-71 months. The district court sentenced Defendant to 57 months imprisonment and he appealed.[2]

Our jurisdiction to review Defendant's sentence arises under 18 U.S.C. § 3742(a). On appeal, Defendant again argues that because his illegal reentry occurred prior to his DWAI conviction and sentence, the district court erred in adding two points to his criminal history under § 4A1.1(d). Otherwise, according to Defendant, application of § 4A1.1(d)'s two-point enhancement to a defendant "found in" the United States unfairly depends upon the fortuitous timing of when immigration officials "find" that defendant for purposes of § 1326(a). Because the propriety of the district court's decision to apply § 4A1.1(d) in this case presents a question of law, our review is de novo. See United States v. Walters, 269 F.3d 1207, 1214 (10th Cir. 2001). We reject Defendant's argument and affirm.[3]

_____

[2] Absent Defendant's two challenged criminal history points, his guideline range based upon a criminal history category of III would have been 46-57 months. In the plea agreement, the Government agreed to recommend sentencing at the low end of the applicable guideline range.

[3] A conviction under § 1326(a) carries a maximum two-year sentence of imprisonment. After filing the indictment against Defendant, however, the Government filed a "Notice of Sentencing Enhancement." The notice indicated Defendant was subject to a maximum twenty-year sentence under § 1326(b)(2) because the Government had

(continued...)

Three of our sister circuits have addressed under similar facts the exact argument Defendant makes in this case. Each rejected the argument. United States v. Coeur, 196 F.3d 1344, 1345-46 (11th Cir. 1999); United States v. Cuevas, 75 F.3d 778, 784 (1st Cir 1996); United States v Santana-Castellano, 74 F.3d 593, 595-98 (5th Cir. 1996). The plain language of § 1326(a) establishes that a previously deported alien who illegally enters and remains in the United States can violate the statute at three different points in time, namely, when the alien (1) "enters," (2) "attempts to enter," or (3) is at any time "found in" the United States. We have held that the "found in" language of § 1326(a) is synonymous with "discovered in." United States v. Bencomo-Castillo, 176 F.3d 1300, 1303 (10th Cir. 1999) (district court properly sentenced defendant as an aggravated felon under § 1326(b)(2) even though the amendment to the theft statute defining defendant's prior felony as aggravated took effect after he reentered United States and was arrested,

---

[3](...continued)
previously deported him following commission of his California aggravated felony. On appeal, Defendant relies on Apprendi v. New Jersey, 530 U.S. 466 (2000), to argue that the district court erred in sentencing him beyond the two-year maximum sentence for the crime charged in the indictment. Assuming without deciding that Defendant preserved this issue for appeal, binding case law forecloses Defendant's argument here. In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court held that the Government need not charge a prior aggravated felony conviction in an indictment to trigger § 1326(b)'s enhanced statutory penalty. In United States v. Wilson, 244 F.3d 1208, 1216-17 (10th Cir. 2001), we concluded that Apprendi did not overrule the narrow holding of Almendarez because the "new rule of Apprendi specifically carves out the recidivism issue." See United States v. Dorris, 236 F.3d 582, 587-88 (10th Cir. 2000). Accordingly, Defendant's 57-month sentence in this case is within the enhanced statutory range of twenty years imprisonment.

4

but before immigration officials identified him as a previously deported alien). "[F]or an alien to be 'found,' the government must have 'knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities.'" Id. (quoting Santana-Castellano, 74 F.3d at 598).

In this case, the Government indicted Defendant for the offense of being "found in" the United States "on or about" August 1, 2000. That was the charge to which Defendant pled guilty. See Coeur, 196 F.3d at 1346 (where a previously deported alien pleads guilty to being "found in" the United States on a date certain, the question of when the alien committed the § 1326(a) offense becomes settled). Although Defendant reentered the United States on a date prior to his Colorado state DWAI conviction and sentence, he committed the § 1326(a) offense charged in the indictment when he was "found." On or about August 1, 2000, Defendant indisputably was serving a criminal probation sentence for his DWAI conviction. Thus, the district court did not err in adding two points to Defendant's criminal history pursuant to U.S.S.G. § 4A1.1(d).[4]

_____

[4] Defendant suggests that application of § 4A1.1(d) in his case presents an equal protection problem because a similarly situated hypothetical offender could have avoided the addition of two criminal history points if "found" before sentencing in the state court. Suffice it to say that § 4A1.1(d) as applied in this case does not violation equal protection guarantees. Convicted criminals are not a suspect class and § 4A1.1(d) "is rationally related to the legitimate government interest of administrative efficiency in application of the Guidelines." United States v. Carroll, 110 F.3d 457, 462 (7th Cir. 1997). "The use of any specific measuring scheme in calculating criminal history will necessarily involve line-drawing likely to be offensive to the defendant who . . . misses the cut off . . . ." Id. at 461; see also United States v. Carson, 988 F.2d 80, 82 (9th Cir. 1993) (holding that
(continued...)

5

AFFIRMED.

[4](...continued)
§ 4A1.1 does not violate equal protection guarantees).

6