[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-11913
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 31, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00425-CR-T-24-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENNIS AUGUSTUS GREEN,
a.k.a. Frank A. Reid,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

(May 31, 2005)

Before BIRCH, BLACK, and PRYOR, Circuit Judges.

PER CURIAM:

Dennis Augustus Green[1] appeals his conviction for unlawful re-entry into the United States by a previously deported aggravated felon, 8 U.S.C. §§ 1326(a), (b)(2). The district court denied the motion to dismiss the charges because the five-year statute of limitations for this crime was tolled. We **AFFIRM**, albeit on somewhat different grounds.

## I. BACKGROUND

The parties agree that, in 1987, Green was deported from the United States. Despite that deportation, on 23 April 1997 Green, while living in the United States, applied for permanent residence in the United States under the assumed name of Frank Reid. Green submitted the application to the Immigration and Naturalization Service ("INS") along with fingerprints to be used for a criminal background check conducted by the Federal Bureau of Investigation ("FBI").

In August 1997, the FBI returned the fingerprint card to the INS, which identified Frank Reid as Green, along with a "rap sheet" for Green. The FBI information, however, was not immediately entered into Green's INS file. In December 1997, Patricia Dwyer interviewed Green to verify the information in his application, but she did not have the results of the FBI identification in the file.

---

[1]We note that the style of the case and indictment against Green spell his middle name "Augustus" whereas his birth certificate, passport, and FBI files spell it "Agustus." Any differences in spelling throughout this opinion are associated with the document referenced.

The rap sheet indicated that Green had been arrested numerous times in the United States from 1985-87 and once in 1996. It further indicated that his citizenship status was unreported.

On Green's application he indicated that he was married to Danette Reid and that he was arrested on a marijuana charge in 1996. On the day of the interview with Green, Dwyer requested that he provide more detailed information regarding prior arrests, including police reports and court dispositions. In February 1999, Dwyer attempted to call Green because there had been no further response. She was only able to contact Danette and Danette's employer who indicated Green traveled back to Jamaica on family business. After these conversations, Dwyer terminated Green's application for permanent residency and sent a letter to his address noting his abandonment of the application. Neither Danette nor Green contacted the INS to correct the abandonment notification.

In January 2003, Green was arrested by the Tampa Police Department on drug charges. After Tampa police reported that he may be an illegal alien, he was taken into custody by the Bureau of Immigration and Customs Enforcement in September 2003. Green was indicted for unlawful re-entry on 9 October 2003.

At trial, Green argued that the statute of limitations barred the charges because the INS was on notice in 1997 that he had previously been deported and

should have prosecuted him within the required five-year period. The trial court held that, even though the five-year statute of limitations began in August 1997, it was tolled from February 1999 until January 2003. Thus, the district court denied the motion to dismiss, and the jury convicted Green.

## II. DISCUSSION

On appeal, Green challenges the district court's finding that the statute of limitations was tolled when the INS believed he was out of the country. He argues that he was "found in" the United States for the purposes of 8 U.S.C. § 1326 and the statute of limitations when the INS received his background check results showing that he "was an individual that had been previously deported." Appellant's Br. at 6-7.

We review the district court's denial of a defendant's motion to dismiss an indictment for abuse of discretion and "'the district court's interpretation and application of the statute of limitations'" de novo. United States v. Torres, 318 F.3d 1058, 1061 n.6 (11th Cir. 2003). Any alien who has been removed and thereafter "enters, attempts to enter, or is at any time found in" the United States, shall be fined or imprisoned. 8 U.S.C. §§ 1326(a)(1), (2). "The statute contains three separate and distinct offenses, set forth disjunctively: entering, attempting to

4

enter, or being found in the United States." United States v. Clarke, 312 F.3d 1343, 1346 (11th Cir. 2002) (per curiam) (quotation omitted).

> The statute of limitations applicable to § 1326 is found in 18 U.S.C. § 3282, and provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. The statute of limitations in criminal cases begins to run when the crime is "complete.". . . . [F]or the commission of the crime [of illegal re-entry] to be complete, [a defendant] had to be "found in" the United States.
> To be "found in" the United States within the meaning of § 1326, the alien must have entered surreptitiously, bypassing a recognized immigration port of entry. The phrase 'found in' is synonymous with "discovered in." . . . . [F]or a defendant to be "found," the government must either know or, with the exercise of diligence typical of law enforcement authorities, could have discovered the illegality of the defendant's presence.

Id. (citations omitted). In Clarke, we cited the Seventh Circuit's conclusion that "an alien is 'found' within the meaning of § 1326 when the INS both discovers his presence in the United States and knows that, because of his identity and status, his presence here is illegal." United States v. Herrera-Ordones, 190 F.3d 504, 510 (7th Cir. 1999); accord Clarke, 312 F.3d at 1348. We "may affirm for any reason supported by the record, even if not relied on by the district court." Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 778 n.3 (11th Cir. 2002).

5

The district court did not abuse its discretion by denying Green's motion to dismiss the indictment. Green submitted an application for permanent residency under a false name, Frank Reid, in 1997, and fingerprints provided with the application were determined to belong to Dennis Agustus Green. However, Green's immigration status was "unreported," and he was not "found in" the United States at that time, because the INS did not have both his identity and immigration status. Although the INS, "with the 'exercise of diligence typical of law enforcement authorities,' could have discovered the illegality of" Green's presence in 1997, Clarke, 312 F.3d at 1346 (citation omitted), it did not do so until the Tampa Police contacted the INS about Green's possible illegal immigration status on 21 January 2003. The INS did, however, exhibit reasonable diligence by (1) contacting Green's wife to follow up on the INS's request for additional information on Green's application, (2) learning from both Green's wife and her employer that Green left the country, and (3) notifying Green that his application for permanent residency was being terminated as a result.

Therefore, on 21 January 2003, the INS knew (1) Green was present in the United States, (2) that his identification was Dennis Green, and (3) that his presence was illegal. Thus, the 9 October 2003, indictment was within the statute of limitations period. Although the district court found that the statute of

limitations was tolled from March 1999 to January 2003, it did not abuse its discretion by denying the motion to dismiss the indictment on statute of limitations grounds.

## III. CONCLUSION

Green brings this appeal of his conviction for unlawful re-entry into the United States by a previously deported aggravated felon and argues that the district court mistakenly denied his dismissal motion because the five-year statute of limitations barred the action against him. As we have explained, the district court properly dismissed the motion. Accordingly, we **AFFIRM.**