FILED
United States Court of Appeals
Tenth Circuit

**January 12, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

FRANCISCO VILLARREAL-ORTIZ,

    Defendant-Appellant.

No. 07-3321

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:07-CR-40040-JAR-1)**

---

Ronald E. Wurtz, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the briefs), Topeka, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **TACHA**, **HOLLOWAY**, and **HOLMES**, Circuit Judges.

---

**PER CURIAM**

---

    Francisco Villarreal-Ortiz pled guilty to the offense of being a deported alien "found" in the United States in violation of 8 U.S.C. § 1326. He appeals his sentence, challenging an increase in his criminal history points pursuant to U.S.S.G.

§ 4A1.1(d), which provides for the increase when the offense was committed while the defendant was on probation for another crime. Here, we are required to determine when a defendant commits the crime of being "found" in the United States. We have jurisdiction pursuant to 18 U.S.C. § 3742(a)(2) and affirm**.**

## I. BACKGROUND

The facts are undisputed. Mr. Villarreal-Ortiz reentered the United States on February 18, 2007, after having been deported in 2002. On February 27, 2007, he was arrested by Kansas police under the alias "Jerardo Ortiz" for drug possession. The next day, on February 28, 2007, Mr. Villarreal-Ortiz told an immigration agent that he "was present in the United States without inspection by an immigration agent," and a detainer was lodged against him. On March 27, 2007, he was admitted to probation on the state drug offense, and on March 30, 2007, an immigration agent took custody of Mr. Villarreal-Ortiz and determined his true name. There is no indication that immigration authorities discovered Mr. Villarreal-Ortiz's status as a prior deportee before March 30, 2007. He was indicted for being "found" in the United States on March 30, 2007, in violation of 8 U.S.C. § 1326, and he later pled guilty to that offense.

At sentencing, the district judge overruled his objection to the assessment of two criminal history points pursuant to U.S.S.G. § 4A1.1(d), which provides for a two point increase if the charged offense was committed while the defendant was on probation. The district judge concluded that Mr. Villarreal-Ortiz had been "found"

2

on March 30th–the day the immigration agent determined his true identity–and therefore had committed the offense of being "found" while on probation for the Kansas offense. Mr. Villarreal-Ortiz preserved his objection to the point increase, and now contends that the § 4A1.1(d) criminal history point increase was improper because his § 1326 violation was complete *before* he was placed on probation.

## II. STANDARD OF REVIEW

Whether the district judge was correct to apply § 4A1.1(d) here is a question of law, and our review is *de novo*. *See United States v. Rosales-Garay*, 283 F.3d 1200, 1202 (10th Cir. 2002) ("Because the propriety of the district court's decision to apply § 4A1.1(d) in this case presents a question of law, our review is de novo.").

## III. DISCUSSION

Mr. Villarreal-Ortiz contends that the § 4A1.1(d) criminal history point increase was improper because his § 1326 violation was complete *before* he was placed on probation for the Kansas offense. In short, he argues that he was "found" for purposes of § 1326, and his crime was therefore complete, when an immigration agent discovered, on February 28, 2007, that he was illegally present in the United States. To resolve the dispute, we must determine when the offense of being "found" in the United States is committed. We conclude that Mr. Villarreal-Ortiz was still committing the offense of being "found" in the United States after being placed on probation, and we therefore affirm the district judge's decision to increase his criminal history points pursuant to § 4A1.1(d).

3

8 U.S.C. § 1326(a) states that "any alien who . . . has been . . . deported . . . and thereafter . . . enters, attempts to enter, or is at any time found in, the United States" shall be fined or imprisoned in accordance with that section. 8 U.S.C. § 1326(a).[1]  In addition, § 4A1.1(d) of the Guidelines instructs: "Add 2 [criminal history] points if the defendant committed the instant offense while under any criminal justice sentence, including probation . . . ." U.S.S.G. § 4A1.1(d). A note to § 4A1.1(d) clarifies that the two points are added "if the defendant committed any part of the instant offense (i.e., any relevant conduct) while under any criminal justice sentence, including probation." *Id.* § 4A1.1 cmt. n.4.

Several of our decisions in this area guide our analysis of when the crime of being "found" in the United States is committed. In *United States v. Ruiz-Gea*, we acknowledged the continuing nature of the offense of being "found" in the United States and discussed when it is first committed. In *Ruiz-Gea*, the appellant was convicted for a state offense, and deported on July 30, 1997. *United States v. Ruiz-Gea*, 340 F.3d 1181, 1189 (10th Cir. 2003). We explained that to assess a criminal history point under U.S.S.G. § 4A1.1(e) (which instructs that criminal history points are added if the offense is committed less than two years after release from

---

[1]Section 1326 provides exceptions to its application that are not relevant to this case. *See* 8 U.S.C. § 1326(a)(2) (excepting an alien from its application when the Attorney General has consented to the alien's application for admission or when the alien is not required to obtain the Attorney General's consent to the alien's application for admission).

4

imprisonment), the district court had to have found that the appellant committed the crime of unlawful reentry by July 1999, two years after his release from imprisonment. *Id.* at 1188–89.

According to the indictment in *Ruiz-Gea*, to which the appellant pled guilty, the appellant was "found" in the United States "on or about March 5, 2001." *Id.* at 1189. We held that although the offense of illegal reentry may have been completed on that date, the district court was not foreclosed from finding that the appellant's commission of the offense began earlier. *Id.* We observed that a previously deported alien who illegally enters and remains in the United States can violate the statute when the alien (1) "enters," (2) "attempts to enter," or (3) is at any time "found in" the United States. *Id.* We further explained that "[i]n the case of a surreptitious reentry like [the appellant's], the 'found in' offense is first committed at the time of the reentry[2] and continues to the time when the defendant is arrested for the offense." *Id.* (internal quotation marks omitted).[3] We then upheld the

---

[2]We recently clarified in the context of a challenge to the applicability of a point increase under § 4A1.1(d) that the illegal reentry must be voluntary. *See United States v. Hernandez-Noriega*, 544 F.3d 1141, 1143 (10th Cir. 2008).

[3]Reviewing the propriety of the application of § 4A1.1(e) in *Ruiz-Gea* required that we determine whether the appellant in that case had committed the offense of being "found" in the United States within two years of his release from imprisonment in July 1997. *Ruiz-Gea*, 340 F.3d at 1188–89. We were able to determine that § 4A1.1(e) was properly applied because the appellant had reentered, and thus committed, the offense of being "found" within two years of July 1997. *Id.* at 1189.

(continued...)

5

application of § 4A1.1(e) because there was ample evidence the appellant had reentered the country within two years of July 1997. *Id.*

Further, when read in light of *Ruiz-Gea*, our decisions in both *United States v. Rosales-Garay* and *United States v. Bencomo-Castillo* provide additional guidance as to when defendants commit–and complete–the offense of being "found" in the United States. In *Rosales-Garay*, the appellant was "found" "on or about" August

---

[3](...continued)

However, we did not need to determine when the appellant ceased committing the offense to conclude that the application of § 4A1.1(e) was proper, and we in fact declined to determine when the appellant ceased committing the offense. *See id.* ("Although the offense of illegal reentry may have been completed on [the date the indictment alleged the appellant was "found"], . . . the district court was not foreclosed from finding that [the appellant's] commission of the offense began at an earlier point."). Therefore, although we noted in *Ruiz-Gea* that the offense of being "found" in the United States ceases being committed at "the time when the defendant is arrested for the offense," any discussion of when the "found" offense ceases to be committed was unnecessary to the resolution of that case, and is therefore dicta that is not binding on this court. *See Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995) (explaining that dicta are statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand); *Bates v. Dep't of Corrections*, 81 F.3d 1008, 1011 (10th Cir. 1996) ("[A] panel of this Court is bound by a holding of a prior panel of this Court but is not bound by a prior panel's dicta.").

We decline to follow the dicta as to when the offense ceased to be committed. If this language in *Ruiz-Gea* were followed, disparate or, less likely, manipulated sentencing results could occur among defendants guilty of being "found" in the United States because the date the defendant is considered to have ceased committing the offense is a potentially important date for sentencing purposes and that date would be dependent on when the government chooses to arrest the defendant. *See, e.g.*, § 4A1.1(d)–(e) (adding criminal history points if the defendant committed the charged offense while under any criminal justice sentence or within two years after release from imprisonment).

1, 2000. 283 F.3d at 1201. He was on probation at that time. *Id.* On appeal, the appellant argued that because his illegal reentry occurred prior to his state sentence, the district court erred in adding two criminal history points under § 4A1.1(d). *Id.* at 1202. We explained that the "found in" language of § 1326(a) is synonymous with "discovered in," and observed that for an alien to be "found," the government must have knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities. *Id.* at 1202–03. We concluded that "[a]lthough [the appellant] reentered the United States on a date prior to his . . . state . . . conviction and sentence, he committed the § 1326(a) offense charged in the indictment when he was 'found'" on or about August 1, 2000, and therefore adding the two points was not error. *Id.* at 1203.

In *United States v. Bencomo-Castillo*, the appellant was arrested on March 23, 1996, after reentering the country. *United States v. Bencomo-Castillo*, 176 F.3d 1300, 1302 (10th Cir. 1999). The appellant gave the arresting authorities an alias and was released. *Id.* He was later rearrested, and he was discovered to be a prior deportee on June 5, 1997, while still in custody. *Id.* at 1303. The appellant argued that the INS had constructive knowledge that he was a previously deported alien during the spring of 1996–in part because he asserted the government was negligent in processing his fingerprints–and was thus "found." *Id.* at 1302, 1304. This court determined that the issue to be resolved was "whether an alien arrested under an alias and not discovered to be a prior deportee has been 'found' within the meaning of

7

§ 1326." *Id.* at 1303. We acknowledged that the government must exercise diligence typical of law enforcement authorities to find prior deportees. *Id.* at 1304. However, we found that the district court did not clearly err in finding that the INS did not identify the appellant as a deported alien before June 5, 1997. *Id.* We also explained that even if the government had not been negligent in processing the appellant's fingerprints in the manner the appellant asserted, the appellant "still would not have been 'found' because the INS no longer knew his whereabouts." *Id.* We held that the appellant was not "found" in the United States until June 1997. *Id.*

Our precedent demonstrates that the crime of being "found" in the United States is a continuing offense, and in the case of a surreptitious entry, that crime is first committed when the defendant voluntarily reenters the country and continues to be committed until the defendant is "found." A defendant is "found" for this purpose when the government knows, or could have known through the exercise of diligence typical of law enforcement, the following: (1) the defendant is a prior deportee, (2) the defendant is illegally present in the United States (i.e., the defendant is an illegal alien), and (3) the defendant's whereabouts. *See Ruiz-Gea*, 340 F.3d at 1189 (holding that in the case of a surreptitious entry the "found" offense is a continuous one that is first committed at the time of reentry, and also observing that the offense may have been complete on the date the defendant was "found"); *Hernandez-Noriega*, 544 F.3d at 1143 (holding that the act of returning to the United States must be voluntary); *Rosales-Garay*, 283 F.3d at 1203 (holding that for an alien

8

to be "found," the government must have knowledge of the illegality of his or her presence, through the exercise of diligence typical of law enforcement); *Bencomo-Castillo*, 176 F.3d at 1302–04 (concluding that an alien arrested under an alias was not "found" until he was identified as a prior deportee, and explaining that the appellant would not have been "found" because his whereabouts were unknown).

Here, Mr. Villarreal-Ortiz began committing the offense of being "found" in the United States at the moment he voluntarily entered the country illegally on February 18, 2007. Further, the government discovered he was a prior deportee on March 30, 2007, at the earliest, as his true name was discovered at that time and there is no indication he was identified as a prior deportee before that name was obtained. Therefore, he ceased committing the offense begun on February 18, 2007, on March 30, 2007, at the earliest. In other words, Mr. Villarreal-Ortiz was still committing the offense of being "found" in the United States after he was placed on probation on March 27, 2007, for the state offense, and therefore the district judge did not err when she applied § 4A1.1(d).

## IV.

Because Mr. Villarreal-Ortiz was continuing to commit the offense of being "found" in the United States while he was on probation for his state offense, the district judge properly increased his criminal history points pursuant to § 4A1.1(d). Her decision is therefore

**AFFIRMED.**

9