In the

# United States Court of Appeals
### For the Seventh Circuit

No. 02-1349

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE BAHENA-GUIFARRO, also
known as Jose Bahena-Jimenez,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 585—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED JANUARY 9, 2003—DECIDED APRIL 1, 2003

Before RIPPLE, ROVNER and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Jose Bahena-Guifarro pled guilty
to two counts of illegal reentry of an alien who had previ-
ously been removed from the United States following a
conviction for an aggravated felony, in violation of 8 U.S.C.
§§ 1326(a) and (b). In this case of first impression, Bahena-
Guifarro appeals the district court's refusal to group the
two counts under U.S.S.G. § 3D1.2. We affirm.

## I.

Jose Bahena-Guifarro was born in Mexico but came to
the United States in 1979 as an infant and lived in Illinois

most of his life. He became a lawful permanent resident in 1989. Unfortunately, the "lawful" part of his stay was short-lived. In 1996, he was convicted in Lake County, Illinois of burglary, robbery and aggravated battery and sentenced to concurrent six year terms of imprisonment. After serving part of his sentence, he was placed on supervised release and transferred to INS custody. In 1997, following a hearing, an immigration judge ordered Bahena deported. He was removed from the United States in 1998 and deported to Mexico.[1] Bahena returned to the United States in early 1999 without obtaining permission of the Attorney General to do so. A few months later, he was convicted of burglary in Lake County, Illinois and sentenced to three years of incarceration. After serving part of his term, he was again placed on supervised release and transferred to INS custody. An immigration judge held another hearing and ordered him deported in April 2000. He was again removed from the United States and returned to Mexico. Once again, Bahena entered the United States without the permission of the Attorney General. In June 2001, he was arrested in Lake County, Illinois for driving under the influence of alcohol. After his conviction (he was sentenced to time served), he was again transferred to INS custody. This time he was charged with two counts of illegal reentry of an alien who has previously been removed from the United States subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b).

Bahena pled guilty to both counts. In the Presentence Investigation Report ("PSR"), the probation officer concluded that the two counts should be grouped under U.S.S.G. § 3D1.2(b) because they involved the same type of offense and the same victim, and because the two acts

---

[1] Counsel refers to Bahena-Guifarro as Bahena throughout the appellant's brief. We will therefore also refer to him as Bahena.

were connected by a common scheme or plan. The government objected to the grouping recommendation, arguing that two separate acts after two separate deportations should be counted as two units under U.S.S.G. § 3D1.4. At the sentencing hearing, the parties first presented their legal positions on the issue to the court. The government argued that, generally, crimes committed on different days should not be grouped. The government analogized Bahena's offenses to two bank robberies committed a year apart, or two assaults against the same victim committed a year apart, which would not be grouped. Unlike multiple drug crimes related to the same transaction or a series of crimes that is somehow linked, the government maintained that the grouping rules were not intended to cover the situation presented by Bahena's crimes:

> [T]his is the same crime committed over a year apart with intervening government action, the arrest and deportation. When somebody does the same thing consciously again over a year apart, we would submit that it's not appropriate for those to be grouped, and that's not within the language or purpose of the rule for those to be grouped.

R.24, at 13. The district court agreed, finding that "these previous convictions do not lend themselves to . . . grouping." R.24, at 13. Because there was no evidence in support of the defendant's position, the court rejected Bahena's argument that he had returned to the United States for the same purpose each time, to be back with his family. The court invited counsel to present evidence regarding why Bahena returned to the United States. Instead, counsel called the probation officer to testify.

The probation officer testified that he called a Sentencing Commission hot line used by probation officers through-

out the United States to obtain assistance with sentencing calculations. He could not identify the person with whom he spoke. He explained the issues of the case to the hot line worker, who had not addressed this particular problem before. The hot line worker indicated that the counts should be grouped. R. 24, at 15-17. After the probation officer's testimony, the district court reaffirmed its earlier conclusion:

> Well, I have already ruled that grouping does not apply under the circumstances in this case. The record has been made on this issue. But this is not a case where the Court should give the benefit in terms of sentencing to the defendant regarding grouping. They are separate and distinct acts, separate in terms of time. Law enforcement intervention, and do not fit within the concept of routine grouping. It just doesn't fit the circumstances in this case.

R. 24, at 17. The district court's refusal to group the counts resulted in an offense level of 23, with a sentencing range of 92 to 115 months in light of Bahena's criminal history category of VI. If the court had grouped the counts, Bahena's offense level would have been 21, with a resultant sentencing range of 77 to 96 months. The court sentenced Bahena to 92 months of imprisonment, followed by three years of supervised release. Bahena appeals.

## II.

We review the district court's interpretation of the Sentencing Guidelines *de novo*, but we review the court's factual findings for clear error only. *United States v. Bolden*, 279 F.3d 498, 502 (7th Cir. 2002). On appeal, Bahena maintains that although his illegal reentries were separated in time, both crimes involved identical harm to societal interests and a common criminal objective. In particular, Bahena urges us to find that the counts

must be grouped together because they involve the same victim (here, society at large) and they were connected by a common criminal objective (in this case, Bahena's desire to be in the United States near his family). The government counters that although Bahena's crimes both involved the same victim, grouping should not be applied when the criminal acts are separated by more than a year and by law enforcement action, including arrest, conviction and deportation. The government maintains that Bahena's actions cannot be considered part of a common scheme or plan when they are separated by a great length of time and each resulted in a separate harm to the United States, including the costs of arrest, prosecution and deportation on two separate occasions.

We begin with the guideline at issue, section 3D1.2, which addresses grouping of "closely related counts." The only part of this guideline that arguably applies to Bahena is subsection (b):

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule . . .

> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

U.S.S.G. § 3D1.2.[2] The commentary to the guideline provides that, for offenses in which there is no identifiable victim (such as drug or immigration offenses), the victim is the societal interest that is harmed. Bahena characterizes the societal interest here as the United States' concern in protecting the borders and controlling immigration. *See United States v. Owolabi*, 69 F.3d 156, 166 (7th Cir. 1995), *cert. denied*, 516 U.S. 1134 (1996) (*citing United States v. Cupa-Guillen*, 34 F.3d 860, 863 (9th Cir. 1994), *cert. denied*, 513 U.S. 1120 (1995)) (8 U.S.C. § 1326(b) furthers the strong societal interest in controlling immigration and effectively policing our borders). The government does not dispute this characterization but maintains that the grouping rules apply only to two classes of cases: those where a total amount of drugs or money is aggregated under the rule or those in which the conduct occurred close in time and involved a common criminal objective. The government objects to grouping here because each crime caused a separate harm and a separate cost to the United States, similar to two prison escapes or two assaults.

---

[2] Bahena also argues that section 3D1.2 contains a "catch-all" provision in subsection (d) that applies to his offenses. In particular, he maintains that because the guideline section applicable to illegal reentry is not listed in subsection (d), "a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level." U.S.S.G. § 3D1.2(d). On its face, however, subsection (d) is limited in application to situations in which "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." *Id*. Illegal reentry into the United States is not the sort of offense contemplated in this guideline.

No other court of appeals has addressed the question presented here. Whether two separate acts of illegal re-entry into the United States should be grouped under the Sentencing Guidelines is an issue of first impression. The Commentary to section 3D1.2 provides some guidance:

> Subsection (b) provides that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times. This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (*e.g.*, robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm).

U.S.S.G. § 3D1.2, Commentary, ¶ 4. In an ensuing list of examples applying this principle, the Commentary states that if a defendant is convicted of two counts of rape for raping the same person on different days, the counts are not to be grouped together. In another example, the Commentary directs the court to group the counts if the defendant is convicted of one count of auto theft and one count of altering the vehicle identification number of the stolen car. *Id*.

We are persuaded that the district court did not err in declining to group the two counts of illegal reentry for two reasons. First, Bahena's offenses did not constitute a single, composite harm. *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998), *cert. denied*, 526 U.S. 1016 (1999) (section 3D1.2 does not authorize the grouping of offenses that do not represent essentially one composite harm). Second, Bahena did not provide the court with any evidence that the crimes were committed as part of a common scheme or plan even though it was his burden to do

so. On the question of one composite harm, we note that each time Bahena illegally reentered the United States, the government incurred the cost of processing and deporting him. Moreover, each time Bahena reentered the United States, he committed a crime in addition to the illegal reentry. Initially having been deported following convictions for burglary, robbery and aggravated battery, Bahena committed another burglary after his first illegal reentry and drove under the influence of alcohol after his second illegal reentry. Thus, in addition to the separate instances of harm incurred in the cost of processing and deporting Bahena each time, the community was subjected to separate instances of risk of harm from Bahena's continued criminal activities. *See Cueto*, 151 F.3d at 639 n.12 ("the same crime against the same victim on separate occasions would not be grouped because each separate crime, even though they may be identical, involves separate instances of risk of harm"); *United States v. McDuffy*, 90 F.3d 233, 237 (7th Cir. 1996) (offenses that are clearly distinct, such as crimes committed on two different days, ought not to be grouped). *Cf. United States v. Bruder*, 945 F.2d 167, 171-72 (7th Cir. 1991) (where the harm to society is unitary, offenses should be grouped). Bahena's two illegal reentries are akin to two counts of escape from prison. *See United States v. Bradford*, 277 F.3d 1311, 1316 (11th Cir. 2002), *cert. denied*, 123 S. Ct. 304 (2002). Although the defendant who escapes engages in the same type of conduct each time and harms the same societal interest each time, each escape is a separate and distinct offense that may not be grouped. *Id.* So too with illegal reentry.

Moreover, as we noted, Bahena bore the burden of demonstrating that the two illegal reentries were part of a common scheme or plan. When this issue arose at the sentencing hearing, Bahena's counsel argued that "Mr. Bahena obviously came back into the United States for

the purpose of being with his family." R. 24, Tr. at 13-14. The court replied "I don't know if that's obvious. That's what you say." R. 24, Tr. at 14. The court then offered Bahena the opportunity to present evidence on this issue, among others. Bahena proffered no evidence regarding his reasons for returning to the United States each time, and the court was certainly not obliged to accept counsel's characterization of Bahena's motives at face value. *See United States v. Pitts*, 176 F.3d 239, 245 (4th Cir. 1999), *cert. denied*, 528 U.S. 911 (1999) ("[A] defendant cannot merely define his scheme in broad fashion and argue that all of his conduct was undertaken to satisfy that broad goal. Rather, a more particularized definition of the defendant's intent is required."). Bahena has demonstrated nothing more than conduct that "constitutes single episodes of criminal behavior, each satisfying an individual—albeit identical—goal." *Pitts*, 176 F.3d at 245. Therefore, the district court was correct not to group the offenses.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*