UNITED STATES of America,
Plaintiff,

v.

Julio ORTIZ, Defendant.

No. 02–CR–240.

United States District Court,
E.D. Wisconsin.

April 30, 2003.

Gregory Haanstad, for Plaintiff.

William U. Burke, for Defendant.

### *MEMORANDUM*

ADELMAN, District Judge.

On April 25, 2003, I sentenced defendant Julio Ortiz on a charge of illegal reentry following deportation for an aggravated felony. The pre-sentence report (PSR) indicated that defendant had fifty criminal history points. I reviewed the PSR and concluded that its calculation was in error. Although the error did not affect defendant's criminal history category (he was in category VI under any possible interpretation), because the issue may recur I write to explain my conclusion.

 Defendant was "found" in the United States by the INS on October 18, 2002, and this is the date of violation charged in the indictment. However, the offense of unlawful reentry under 8 U.S.C. § 1326 may be committed by a previously deported alien at three different points in time—when he (1) "enters," (2) "attempts to enter," or (3) is at any time "found in" the United States. *United States v. Ro-*

*sales–Garay,* 283 F.3d 1200, 1202 (10th Cir.), *cert. denied,* 536 U.S. 934, 122 S.Ct. 2612, 153 L.Ed.2d 797 (2002); *see also United States v. Gomez,* 38 F.3d 1031, 1033–34 (8th Cir.1994). Further, unlawful reentry is a continuing offense. Thus, at least in the case of surreptitious reentry, "the 'found in' offense is first committed at the time of the reentry and continues to the time when [the defendant] is arrested for the offense." *United States v. Lopez–Flores,* 275 F.3d 661, 663 (7th Cir.2001).

For purposes of determining the criminal history of a § 1326 offender under U.S.S.G. § 4A1.1, courts have approved counting back from the date of reentry, even if the offense was not completed until several years later when the defendant was "found." *See id.* (citing *United States v. Reyes–Pacheco,* 248 F.3d 942, 946 (9th Cir.2001); *United States v. Reyes–Nava,* 169 F.3d 278, 279–80 (5th Cir.1999) (per curiam); *United States v. Castrillon–Gonzalez,* 77 F.3d 403, 405–06 (11th Cir.1996); *Gomez,* 38 F.3d at 1034–35). Courts have also approved adding criminal history points for sentences imposed *after* reentry but before the defendant was "found." *See Rosales–Garay,* 283 F.3d at 1202–03 (citing *United States v. Coeur,* 196 F.3d 1344, 1345–46 (11th Cir.1999); *United States v. Cuevas,* 75 F.3d 778, 784 (1st Cir.1996); *United States v. Santana–Castellano,* 74 F.3d 593, 595–98 (5th Cir.1996)).

In the present case, although defendant was not "found in" the United States until October 18, 2002, there was evidence that he reentered the country on or about December 15, 1999. Therefore, there was support in the record for computing defendant's criminal history by counting back ten or fifteen years from December 15, 1999. *See* U.S.S.G. § 4A1.2(d). However, the PSR did not use the date of December 15, 1999. Rather, it counted back from October 1993, one

of the dates on which defendant *previously* illegally reentered the country after deportation. Defendant first came to the United States from Mexico in about 1981. After being convicted of several crimes, he was deported on October 16, 1992. He returned to the United States in 1993, committed additional offenses, and was imprisoned until 1999. On December 11, 1999, he was again deported but again reentered the country on or about December 15, 1999.

Thus, defendant's offense of conviction began on December 15, 1999 when he illegally reentered the United States and continued until October 18, 2002 when he was found. The PSR should have used these dates to compute defendant's criminal history rather than earlier periods of unlawful presence in the United States.

The case of *United States v. Corro–Balbuena*, 187 F.3d 483 (5th Cir.1999), is to the contrary, but I believe that the case was wrongly decided. There, as here, the defendant had been deported and illegally reentered the country several times before being charged with a violation of § 1326. The defendant in that case was first deported on October 9, 1991; returned and was arrested in the United States on February 19, 1994; deported on March 2, 1994; arrested in this country on March 19, 1994; deported on March 30, 1994; reentered again sometime between March and July 1994, and was arrested and placed on one year's probation for a state offense; deported on September 15, 1994 while still on probation; illegally reentered yet again sometime between September 1994 and March 1995, and was arrested and sentenced to 140 days in jail on April 27, 1995. The defendant claimed that after serving his jail sentence he voluntarily left the country and remained in Mexico until November 1997, when he returned to the United States. He was "found" by the INS in January 1998 and indicted for a § 1326 offense soon after. *Id.* at 484–85.

The district court imposed two criminal history points under U.S.S.G. § 4A1.1(d) because the defendant committed the instant offense while under a criminal justice sentence, i.e. the one year term of probation imposed in July 1994.[1] *Id.* at 485. The defendant appealed, arguing that this was error because his probation had terminated before November 1997, when he last reentered the country. The court of appeals affirmed, stating:

> The core dispute in this case concerns when Corro–Balbuena's continuing § 1326 offense began. The district court held that any of the dates on which Corro–Balbuena surreptitiously and illegally reentered the United States after deportation and without permission could be used as the start date of Corro–Balbuena's offense, which continued until Corro–Balbuena was found by the INS in January 1998. Corro–Balbuena maintains that his § 1326 offense may only be defined with reference to his most recent illegal reentry, which he alleges did not occur until November 1997. Corro–Balbuena maintains that the district court was not free to consider, either as part of the instant offense or as relevant conduct, the four prior unlawful reentries when imposing his sentence.
>
> We disagree. Corro–Balbuena illegally reentered the country sometime after he

---

1. It appears that the district court did not decide whether the defendant was telling the truth when he claimed that he voluntarily left the country following his April 27, 1995 jail sentence. If the defendant had continuously been in the United States between his September 1994–March 1995 reentry and his January 1998 location by the INS, there would have been no dispute that he committed the instant offense while on probation. In the present case, defendant's previous exits from the United States were involuntary so there is no real dispute as to when he was here and when he was not.

was deported in 1991 and before he was apprehended by INS officers in 1994. Corro–Balbuena illegally reentered the country again in early 1994, and again in mid–1994. In July 1994, Corro–Balbuena was convicted and placed under a criminal justice sentence which included a one year probationary period. Less than one year later, and while he was still under a criminal justice sentence, Corro–Balbuena illegally entered the country again. Shortly thereafter, Corro–Balbuena was convicted of auto theft and placed under another criminal justice sentence requiring that he serve 140 days in confinement. None of these facts are disputed. Each or any of these multiple surreptitious and illegal reentries may be used, either as part of the instant offense or as relevant conduct, to support the district court's application of § 4A1.1(d). While it may be impossible to pinpoint the exact date on which Corro–Balbuena illegally reentered the United States, Corro–Balbuena's illegal reentries and his continued unlawful presence in the United States are adequately illustrated by his multiple criminal convictions in Texas state court. Corro–Balbuena's naked assertions that he voluntarily departed the United States in 1995 and did not return until shortly before he was found by the INS in January 1998 may be sufficient to create a new and independent offense. That conduct is insufficient, however, even if true, to extinguish a pre-existing and continuing offense arising from prior illegal reentries.

*Id.* at 486.

In support of its decision, the court cited *Santana–Castellano* and *Reyes–Nava. Id.*

As noted above, these cases stand for the proposition that a § 1326 violation is a continuing offense that "begins when the defendant illegally renters the country and does not become complete until the defendant is found by the INS in the United States." *Id.* at 485. However, neither case supports the court's holding that previous, *completed* violations of § 1326 may be used to compute criminal history on a *later* reentry offense. The court's conclusion that previous illegal reentries "may be used, either as part of the instant offense or as relevant conduct, to support the district court's application of § 4A1.1(d)," *id.* at 486, cannot withstand scrutiny.

First, previous and completed reentries are not "part" of subsequent illegal reentries. Violations of § 1326 continue from the date of reentry until the date the defendant is found, at which point they end. They do not continue even *after* the defendant is found and leaves the country. It would be absurd to say that a defendant continues to violate § 1326 on foreign soil.

If a defendant leaves or is deported and later reenters, a new offense begins rather than a previous one continuing.[2] *See United States v. Bahena–Guifarro,* 324 F.3d 560, 564 (7th Cir.2003) (holding that defendant's two illegal reentries, separated by intervening government action, i.e. arrest and deportation, were separate and distinct offenses). Under the reasoning of *Corro–Balbuena,* a defendant could be convicted of only one § 1326 violation in his life because any subsequent illegal reentry would be "part" of the offense of conviction, thus subject to the defense of double jeopardy.[3] This cannot be the law.[4]

---

2. Being "found" by the INS terminates a § 1326 offense; leaving the country creates the circumstances under which a new violation of § 1326 could be committed (if the defendant reenters).

3. The court stated that Corro–Balbuena's November 1997 reentry "may be sufficient to create a new and independent offense [yet] is insufficient ... to extinguish a pre-existing

Second, previous and completed reentries cannot be considered relevant conduct in subsequent reentries. The guidelines define relevant conduct as follows:

(1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a).

In the case of a violation of § 1326, U.S.S.G. § 1B1.3(a)(1) governs the determination of relevant conduct. This is so because § 1B1.3(a)(2) applies only to counts that would be grouped under § 3D1.2(d), i.e. those where

the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

"Illegal reentry into the United States is not the sort of offense contemplated in this guideline." *Bahena–Guifarro*, 324 F.3d at 563 n. 2. The offense level in § 1326 cases is primarily determined by the nature of the crime that led to deportation, not by any quantity of substance or amount of loss, and the specific offense guideline, § 2L1.2, is not written to cover ongoing or continuous behavior. Mere repetition of the same crime—even against the same victim—does not require grouping under § 3D1.2. *Id.* (holding that separate incidents of illegal reentry may not be grouped under § 3D1.2); *see also United States v. Dawson*, 1 F.3d 457, 464 (7th Cir.1993).

Under § 1B1.3(a)(1)(A), relevant conduct includes "acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by

and continuing offense arising from prior illegal reentries." *Id.* at 486. How the same act can simultaneously constitute a new § 1326 offense and also be "part" or continuation of a previous § 1326 offense is unexplained by the court.

4. This logic could also apply to other "continuing offenses" such as illegal possession of

firearms or child pornography. *See Santana–Castellano*, 74 F.3d at 597 ("[B]oth illegal possession of firearms and ongoing child pornography have been found to be continuing offenses."). Could a defendant be convicted of being a felon in possession of a firearm just once, no matter how many times he subsequently obtained a weapon?

the defendant [during] the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." [5] A prior completed reentry is not relevant conduct in connection with a subsequent § 1326 violation because it was not committed by the defendant during commission of the offense of conviction, in preparation for it or in the course of attempting to avoid detection or responsibility; rather, it constitutes a separate and distinct crime that has already terminated. *See Bahena–Guifarro,* 324 F.3d at 564.

The *Corro–Balbuena* court made no attempt to explain how it reached the conclusion that § 1B1.3(a) applied to the facts before it and could not have convincingly done so. In the case of a non-groupable offense such as a § 1326 violation, the sentence may be based only on conduct underlying the offense of conviction. And as explained above, although unlawful reentry is a continuing offense, it does not continue forever; it ends when the defendant is found and leaves the country.

For the foregoing reasons, the PSR's use of the October 1993 date to calculate defendant's criminal history was a mistake. The earliest date from which the PSR could have counted back was the date of the illegal reentry in connection with the offense of conviction, December 15, 1999.

---

**5.** In neither *Corro–Balbuena* nor the present case was the criminal activity "jointly undertaken"; rather, the defendants reentered alone and without assistance. Therefore, § 1B1.3(a)(1)(B) is inapplicable.