**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br>v.<br>ROGELIO ESPINOZA-BAZA,<br>*Defendant-Appellant.* | No. 09-10398<br>D.C. No.<br>1:08-cr-00351-<br>AWI-1<br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Chief District Judge, Presiding

Argued and Submitted
January 10, 2011—San Francisco, California

Filed August 4, 2011

Before: J. Clifford Wallace, John T. Noonan, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Wallace

**COUNSEL**

Douglas Beevers, Assistant Federal Public Defender, Sacramento, California, for the appellant.

Ian L. Garriques, Assistant United States Attorney, Fresno, California, for the appellee.

**OPINION**

WALLACE, Senior Circuit Judge:

After a three-day jury trial in May 2009, Espinoza-Baza was convicted on two counts of violating 8 U.S.C. § 1326, which prohibits a deported alien from reentering the United States without the consent of the United States Attorney General. Espinoza-Baza now appeals from his conviction and from his subsequent sentence of ninety-six months' imprisonment. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**I.**

Espinoza-Baza was born in Mexico on July 2, 1980. Three years later, his family relocated to the United States, where

Espinoza-Baza resided for the next nineteen years. In January 2002, after being convicted on a series of drug-related offenses, Espinoza-Baza was deported to Mexico.

Not long after his 2002 deportation, Espinoza-Baza illegally reentered the United States and engaged in more criminal conduct. As a result, following a state conviction for assault with a deadly weapon, Espinoza-Baza was deported for the second time in February 2005. Again, however, Espinoza-Baza immediately returned to the United States, where he was apprehended after committing two additional offenses: disturbing the peace in October 2005 and evading a peace officer in November 2005.

In October 2008, after serving prison time for his 2005 offenses, Espinoza-Baza was charged with being an alien found in the United States after having been deported for committing an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2). In a superseding indictment, Espinoza-Baza was later charged with two separate violations of section 1326: one count of illegally reentering the United States in 2002 and a second count of illegal reentry in early 2005.

Espinoza-Baza's case proceeded to trial in May 2009, where one of the primary issues pertained to Espinoza-Baza's alienage. At trial, the government introduced evidence that Espinoza-Baza was a Mexican citizen and that both of his parents were born in Mexico. This evidence consisted of two sworn confessions in which Espinoza-Baza admitted to police and immigration officials that neither he nor his parents were United States citizens. As part of his defense, Espinoza-Baza introduced evidence indicating that he had made inconsistent statements about his mother's citizenship status. Specifically, Espinoza-Baza introduced notes from a police interview in which an investigating officer noted that the mother might be a United States citizen after Espinoza-Baza expressed uncertainty about his mother's citizenship.

After the government rested its case, Espinoza-Baza sought to proffer evidence that his maternal grandfather was born in Texas. He also sought to introduce testimony from two of his maternal aunts, who would have testified that Espinoza-Baza's Mexican-born mother entered the United States illegally at some unspecified time. According to Espinoza-Baza, this evidence was admissible to show that he might have obtained derivative citizenship through his mother and grandfather.

After considering Espinoza-Baza's proffer, the district court excluded this evidence. Relying on 8 U.S.C. § 1401(g), which sets forth the requirements for derivative citizenship, the district court ruled that Espinoza-Baza could qualify for this defense only if his mother had been a United States citizen and had resided in the United States for at least ten years prior to Espinoza-Baza's birth (with at least five years of residency after she reached age fourteen). Because Espinoza-Baza did not introduce evidence linking his grandfather's alleged citizenship with these requirements, the district court concluded that this proffer, to the extent it was relevant at all, was of very minimal probative value. The district court therefore ruled, pursuant to Federal Rule of Evidence 403, that consideration of this evidence by the jury unnecessarily risked confusion of the issues and could have resulted in a verdict based upon mere speculation.

Following the district court's evidentiary ruling, Espinoza-Baza raised one additional issue pertaining to derivative citizenship. This time, he requested that the court instruct the jury on the defense, arguing that at least some evidence of derivative citizenship had been introduced at trial. The district court, however, disagreed and denied Espinoza-Baza's instruction, concluding that the trial record did not contain anything more than a mere scintilla of evidence of derivative citizenship.

At the conclusion of Espinoza-Baza's trial, the jury found him guilty on both counts of the superceding indictment, and

the district court sentenced him to ninety-six months' imprisonment. Based on a total offense level of 24 and a criminal history category of VI, the district court calculated the advisory guidelines range to be 100 to 125 months' imprisonment. Yet, rather than impose a sentence within this range, the district court granted a *downward* variance[1] and sentenced Espinoza-Baza to just ninety-six months. According to the district court, a downward variance was appropriate because Espinoza-Baza had spent almost his entire life in the United States and had become culturally assimilated to life in America. Nevertheless, given Espinoza-Baza's significant criminal history and because he had reentered the United States illegally on multiple occasions, the district court declined Espinoza-Baza's invitation to impose an even lower sentence.

On appeal, Espinoza-Baza challenges the district court's evidentiary ruling and its refusal to give a jury instruction pertaining to derivative citizenship. He also contends that his ninety-six month sentence is both procedurally and substantively unreasonable.

## II.

The crime of illegally reentering the United States after deportation consists of the following elements: (1) "the defendant is an alien;" (2) he "was deported and removed from the United States;" and (3) he thereafter "voluntarily reentered and remained in the United States without the consent of the Attorney General." *United States v. Godinez-Rabadan*, 289 F.3d 630, 633 (9th Cir. 2002); *see also* 8 U.S.C. § 1326. This

---

[1]A "variance . . . occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a)." *United States v. Cruz-Perez*, 567 F.3d 1142, 1146 (9th Cir. 2009) (internal quotation marks omitted). This term of art is distinct from a "departure," which results in "a change from the final sentencing range computed by examining the provisions of the Guidelines themselves." *Id.* (internal quotation marks omitted).

appeal raises two challenges related to the alienage element. First, Espinoza-Baza contends that the district court improperly excluded evidence related to his derivative citizenship defense. Second, he argues that the district court erred by rejecting his request for a jury instruction on that defense.

## A.

We turn first to Espinoza-Baza's contention that the district court improperly excluded evidence related to derivative citizenship. In illegal reentry cases, the government carries the burden of establishing alienage by proof beyond a reasonable doubt. *United States v. Smith-Baltiher*, 424 F.3d 913, 921 (9th Cir. 2005). This means that an individual accused of violating section 1326 is "entitled to put the government to its proof on the issue of alienage" and must be permitted "to defend himself by seeking to prove that he was not an alien." *United States v. Meza-Soria*, 935 F.2d 166, 170 (9th Cir. 1991). A defendant's right to present evidence in support of his defense, however, is not without limits. *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002). "While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence" that is irrelevant, lacking in foundation, or when "its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *see also* Fed. R. Evid. 401 (relevancy), 403 (unfair prejudice and jury confusion).

In his appeal, Espinoza-Baza argues that the district court committed reversible error when it excluded evidence suggesting that his grandfather was a United States citizen. This challenge requires us to consider two issues. First, we must determine whether the grandfather's alleged citizenship is relevant to the question of alienage. If so, we then must decide

whether the district court abused its discretion when it held that the potential for jury confusion outweighed the probative value of this evidence.

**1.**

Under the Federal Rules, evidence is relevant if is has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In illegal reentry cases, this means that when a defendant brings forth probative "evidence that has a tendency to make derivative citizenship more likely, it is relevant to the issue of alienage." *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 724 (9th Cir. 2011).

**[1]** To determine whether Espinoza-Baza's proffered evidence has a tendency to make derivative citizenship more likely, it is first helpful to address the requirements of that defense. *See Scales v. INS*, 232 F.3d 1159, 1162 (9th Cir. 2000) (using "[t]he applicable law for transmitting citizenship . . . that was in effect at the time of [an individual's] birth" to determine derivative citizenship). Two requirements were necessary for Espinoza-Baza, who was born in wedlock in 1980, to have obtained derivative citizenship: (1) one of his parents must have been a United States citizen at the time of Espinoza-Baza's birth; and (2) this parent must have been "physically present" in the United States for at least ten years prior to Espinoza-Baza's birth, with five of those years occurring after the parent attained the age of fourteen. *See* 8 U.S.C. § 1401(g) (1980).

**[2]** In light of our decision in *Sandoval-Gonzalez*, it is clear that Espinoza-Baza's proffer is legally relevant to the issue of alienage. In support of his derivative-citizenship defense, Espinoza-Baza sought to introduce testimony suggesting that his maternal grandfather was born in the United States. Specifically, two of Espinoza-Baza's aunts offered to

testify that their father—Espinoza-Baza's grandfather—was born in Texas and resided there for some unspecified time period before relocating to Mexico. We agree with the government that this evidence only indirectly and tangentially relates to the requirements for derivative citizenship: the grandfather's citizenship provides little in the way of evidence indicating that one of Espinoza-Baza's parents was a citizen or that this parent resided in the United States for the requisite time period. Nevertheless, under the generous standard articulated in *Sandoval-Gonzalez*, Espinoza-Baza's proffer is legally relevant because a person whose grandfather was born in the United States is more likely to be a derivative citizen than someone whose grandparents were born abroad.

The government contends that Espinoza-Baza's evidence is not relevant because it fails to address section 1401(g)'s residency requirement. Based on decisions from the First and Second Circuits, the government further asserts that Espinoza-Baza was required to proffer prima facie evidence on *both* elements of the defense before his proffer would be deemed relevant for purposes of derivative citizenship. *See United States v. Guerrier*, 428 F.3d 76, 80 (1st Cir. 2005) (affirming the exclusion of evidence that supported some, but not all, of the requirements for derivative citizenship); *United States v. Williams*, 271 F. App'x 81, 84 (2d Cir. 2008) (concluding that the defendant "fail[ed] to establish . . . a *prima facie* derivative citizenship claim"). While we see some logic in our sister circuits' approach—that is, requiring illegal reentry defendants to proffer at least some evidence relating to both prongs of the derivative citizenship defense before allowing that evidence to go to the jury—our analysis is constrained by *Sandoval-Gonzalez*. That case leaves us with no choice but to conclude that Espinoza-Baza's evidence of his grandfather's citizenship was relevant to the issue of alienage.

**2.**

**[3]** Yet, while Espinoza-Baza's evidence is legally relevant, that is not the end our inquiry. Under Federal Rule of

Evidence 403, a district court has discretion to exclude even relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We afford "[a] district court's Rule 403 determination . . . great deference." *United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009). As we explained in *Kanekoa v. City and County of Honolulu*, "[t]rial judges are better able to sense the dynamics of a trial than we can ever be, and broad discretion must be accorded them in balancing probative value against prejudice." 879 F.2d 607, 613-14 (9th Cir. 1989) (internal quotation marks omitted). Thus, "[w]here the evidence is of very slight (if any) probative value, . . . even a modest likelihood of unfair prejudice or a small risk of misleading the jury" will justify excluding that evidence. *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). Further, given the substantial deference owed to a district court's Rule 403 rulings, we generally will not disturb such a ruling unless it "lies beyond the pale of reasonable justification under the circumstances." *United States v. Pineda-Doval*, 614 F.3d 1019, 1035 (9th Cir. 2010) (internal quotation marks omitted).

**[4]** Applying these principles, we hold that the district court did not abuse its discretion by excluding evidence suggesting that Espinoza-Baza's grandfather was born in the United States. Here, we agree with the district court's conclusion that the probative value of Espinoza-Baza's evidence is, at best, marginal. According to Espinoza-Baza, his grandfather's citizenship status gives rise to an inference that he might have obtained derivative citizenship. But, for the jury to plausibly draw that inference, additional facts are necessary. Here, there is no indication that the grandfather spent any significant time in the United States following his birth (so as to convey derivative citizenship to Espinoza-Baza's mother), or that the mother even entered the United States

prior to Espinoza-Baza's birth or resided here for a sufficient period of time (as necessary to convey derivative citizenship to her son). Absent these facts, we are left with only speculation, not proof. Because the record is devoid of anything that links the grandfather's citizenship status with the requirements for derivative citizenship under 8 U.S.C. § 1401(g), the probative value of Espinoza-Baza's evidence is extremely small. *See United States v. 87.98 Acres*, 530 F.3d 899, 907-08 (9th Cir. 2008) (holding the probative value of excluded evidence to be minimal where there was nothing "linking" that evidence to the facts at issue); *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1432 (9th Cir. 1991) ("Given the tenuous link between" the proffered evidence and the dispositive issues, "the district court could reasonably find that plaintiff's proffered evidence" had little "probative value").

**[5]** We also agree with the district court's conclusion that Espinoza-Baza's evidence, if admitted, would have created a substantial risk of confusion and that it might have caused the jury to base its verdict on highly speculative evidence rather than Espinoza-Baza's guilt or innocence. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (permitting trial courts to exclude evidence pursuant to Rule 403 having "an undue tendency to suggest decision on an improper basis"). Under our precedent, even "a small risk of misleading the jury" substantially outweighs the probative value of minimally probative evidence. *Hitt*, 981 F.2d at 424; *cf. United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098-99 (9th Cir. 2005) (evidence presenting even a "modest likelihood of unfair prejudice" is "high enough to outweigh the . . . probative value" of marginally relevant evidence). Absent facts connecting Espinoza-Baza's evidence with the elements of derivative citizenship, there is at least a modest risk that the jury might be misled into reaching a verdict on pure speculation. Thus, because Espinoza-Baza's evidence provided only marginal probative value and presented an undue risk of jury confusion, we cannot say that the district court's decision falls

outside "the pale of reasonable justification under the circumstances." *Pineda-Doval*, 614 F.3d at 1035.

Our conclusion finds additional support here because Espinoza-Baza's proffer, on its face, demonstrates that there is no way that he could have obtained derivative citizenship. According to Espinoza-Baza's proffered evidence, his aunts would have testified that his "mother went to the United States *illegally* at some point." If Espinoza-Baza's mother lacked legal authorization to enter and reside in the United States, then there is no way that she could have been a citizen, derivative or otherwise. Obviously, if Espinoza-Baza's mother was not a citizen, it follows that she—irrespective of the grandfather's citizenship status or the duration of the mother's residency in the United States—could not possibly have conveyed derivative citizenship to her son. Under these particular circumstances, the probative value of the excluded evidence is virtually zero. *See United States v. Velasques-Vela*, 443 F.2d 231, 233 (9th Cir. 1971) (holding that proffered evidence arguably relevant to one element of derivative citizenship was properly excluded because that evidence demonstrated clearly that the defendant could not possibly satisfy the other element).

**[6]** We recognize that the district court conducted its Rule 403 analysis without the benefit of our recent decision in *Sandoval-Gonzalez*. That case holds "that a criminal defendant faces no burden whatsoever regarding the issue of derivative citizenship in a prosecution for an offense of which alienage is an element." 642 F.3d at 723. But again, while this language provides section 1326 defendants with a broad right to introduce relevant evidence relating to derivative citizenship, "well-established rules of evidence" can still trump that right when the probative value of the defendant's evidence "is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes*, 547 U.S. at 326.

**[7]** Under our precedent, a previous decision does not bind a subsequent panel with respect to matters that were not considered or addressed in the prior case. *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1249 (9th Cir. 2000). Hence, *Sandoval-Gonzalez*, which did not consider or address *Holmes* or Rule 403, does not control our analysis of whether the potential for jury confusion in this case substantially outweighed the limited probative value of Espinoza-Baza's proffer. *See id.* In fact, because "considerations arising under Rule 403 are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues," *Hinkson*, 585 F.3d at 1267 (internal quotation marks omitted), *Sandoval-Gonzalez* cannot reasonably be construed as a blanket prohibition on a district court's ability to weigh evidence pursuant to Rule 403. On the specific facts, circumstances, and issues presented here, we therefore hold that the district court acted within its discretion when it excluded Espinoza-Baza's minimally relevant evidence, which presented the potential for jury confusion and which could have resulted in a verdict premised on mere speculation.

**B.**

**[8]** We turn now to Espinoza-Baza's argument that the district court erred by declining to issue a jury instruction on derivative citizenship. Under our precedent, a criminal defendant is generally entitled to an instruction on his theory of the case. *United States v. Gomez-Osorio*, 957 F.2d 636, 642 (9th Cir. 1992). A trial court, however, need not instruct the jury on theories that lack a factual foundation in the evidence. *Id.* Where, as here, "the parties dispute whether the required factual foundation exists," we "apply an abuse of discretion standard of review." *Id.*; *see also United States v. Burt*, 410 F.3d 1100, 1103 (9th Cir. 2005) (reviewing "the district court's findings on whether a defendant's theories are factually supported for an abuse of discretion").

**[9]** The test for whether a proposed instruction has an adequate evidentiary foundation is somewhat "generous." *United*

*States v. Thomas*, 612 F.3d 1107, 1121 (9th Cir. 2010). In general, a "defendant is entitled to his proposed instruction even if his evidence is weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Johnson*, 459 F.3d 990, 993 (9th Cir. 2006) (internal quotation marks omitted). But, as we explained in *Thomas*, the trial record must still contain "evidence upon which the jury could rationally find for the defendant." 612 F.3d at 1121. Applying this standard in illegal reentry cases, we have held that a defendant must present something more than a mere "scintilla of evidence" of derivative citizenship to warrant a defense instruction on that theory. *United States v. Torres-Flores*, 502 F.3d 885, 887 n.2 (9th Cir. 2007); *see also United States v. Wofford*, 122 F.3d 787, 789 (9th Cir. 1997) ("A mere scintilla of evidence supporting a defendant's theory . . . is not sufficient to warrant a defense instruction" (internal quotation marks omitted)).

After careful review of the trial record, we hold that the district court did not abuse its discretion when it found that Espinoza-Baza's derivative citizenship theory lacked the necessary factual foundation in the evidence. *See Gomez-Osorio*, 957 F.2d at 642. In support of his request for an instruction on this defense, Espinoza-Baza directs our attention to notes from a May 2007 interview wherein an Immigration and Customs Enforcement Officer speculated that Espinoza-Baza's mother might be a United States citizen. In these interview notes, Officer Jesse Cruz listed "USC" for the mother's nationality after Espinoza-Baza stated that "he wasn't certain about his parents' citizenship" and that he "didn't know" whether his mother was "a U.S. citizen or Mexican citizen or legal permanent resident."

**[10]** Officer Cruz's interview notes and the hearsay statements upon which they are based present nothing more than a mere "scintilla of evidence" in support of Espinoza-Baza's proposed instruction on derivative citizenship. *Torres-Flores*, 502 F.3d at 887 n.2. Although Espinoza-Baza's unsubstantiated and self-serving hearsay statements did find their way

into the trial record, this evidence contains virtually no probative value—at least as far as derivative citizenship is concerned—because it merely suggested Espinoza-Baza's uncertainty about his mother's citizenship. Espinoza-Baza's statement that he did not know his mother's nationality suffers from the same problem: it simply does not provide an evidentiary foundation upon which the "jury could rationally find for the defendant" on the basis of derivative citizenship. *Thomas*, 612 F.3d at 1121. Without any facts linking Espinoza-Baza's evidence with the required elements for derivative citizenship, an instruction on the defense was not required.

Additionally, and notwithstanding Espinoza-Baza's assertions to the contrary, the jury's inquiry to the district court regarding derivative citizenship does not alter our analysis. During its deliberations, the jury asked, "What is derivative citizenship? Is it the same as dual?" On the current record, we can only speculate about what the jury was thinking when it raised this question. *Cf. United States v. Kim*, 196 F.3d 1079, 1082-83 (9th Cir. 1999) (rejecting speculative arguments regarding the significance of an ambiguous jury note). Perhaps the jury was simply curious because Espinoza-Baza's attorney referred to derivative citizenship during his opening statement, but, lacking probative evidence, never discussed the matter further. Whatever the reason, the jury's note is not of any consequence here. Given that the record lacks evidence of derivative citizenship upon which the jury could have found in Espinoza-Baza's favor, no instruction on that theory was necessary. *See Thomas*, 612 F.3d at 1121.

**[11]** We also are unpersuaded by Espinoza-Baza's suggestion that an instruction was necessary in light of our decisions in *Smith-Baltiher* and *Sandoval-Gonzalez*. In those cases, we reasoned that where derivative citizenship is at issue, a section 1326 defendant " 'must be allowed to present that defense to the jury.' " *Sandoval-Gonzalez*, 642 F.3d at 722, *quoting Smith-Baltiher*, 424 F.3d at 922. Whatever the potential impli-

cations of this broad language, *Torres-Flores* and *Thomas* are directly on point: there must be evidence that puts the defense in issue to warrant an instruction on a defendant's theory of the case. 502 F.3d at 887 n.2; 612 F.3d at 1121. Because the trial record contains nothing more than a mere scintilla of evidence of derivative citizenship, the district court did not abuse its discretion when it found the requisite evidentiary foundation lacking and refused to instruct the jury pursuant to that theory.

## III.

Espinoza-Baza next raises two challenges to his ninety-six month sentence: (1) the district court committed procedural error because it miscalculated the applicable guidelines range; and (2) the district court committed substantive error by imposing a sentence "greater than necessary" to comply with 18 U.S.C. § 3553(a).

## A.

Although Espinoza-Baza illegally reentered the United States on two separate occasions—once in 2002 and again in 2005—he contends that the district court committed procedural error by imposing a multiple-count enhancement pursuant to U.S.S.G. § 3D1.4. According to Espinoza-Baza, his separate counts should have been grouped together under U.S.S.G. § 3D1.2, which would have resulted in a lower guidelines range. Our appellate review requires us to ensure that a criminal defendant's sentence is procedurally reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). To be reasonable, his sentence must be based on an accurate calculation of the applicable sentencing guidelines range. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008). When evaluating whether a district court correctly calculated that range, we consider the district court's interpretation of the guidelines de novo. *United States v. Albritton*, 622 F.3d 1104, 1106 (9th Cir. 2010).

**[12]** The federal sentencing guidelines require "that '[a]ll counts involving substantially the same harm . . . be grouped together into a single Group' for purposes of calculating the offense level pertaining to a multiple-count conviction." *United States v. Nanthanseng*, 221 F.3d 1082, 1083 (9th Cir. 2000), *quoting* U.S.S.G. § 3D1.2. Where "multiple counts fall outside a single Group, . . . U.S.S.G. § 3D1.4 requires the imposition of a discounted enhancement based on the number and severity of the counts that fall outside that group." *Id.* For purposes of section 3D1.2, offenses involve "substantially the same harm" and must be grouped under the following circumstances:

   (a)   When counts involve the same victim and the same act or transaction.

   (b)   When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

   (c)   When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

   (d)   When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2. For immigration offenses, the term "victim" is defined as "the societal interest that is harmed." *Id.* § 3D1.2 n.2.

**[13]** Espinoza-Baza's illegal reentries, separated by three years, are ineligible for grouping pursuant to section 3D1.2. As an initial matter, grouping is clearly unavailable pursuant to subsections (a), (c), and (d). Subsection (a) does not apply because Espinoza-Baza's 2002 and 2005 illegal reentries were not part of the "same act or transaction." Similarly, grouping under subsection (c) is unavailable because neither of Espinoza-Baza's counts "embod[y] conduct that is treated as a specific offense characteristic in" the guideline applicable to the other count. Subsection (d) is inapplicable because Espinoza-Baza's offense level was not determined based on "the total amount of harm or loss" and because the conduct underlying Espinoza-Baza's separate offenses was not "ongoing or continuous in nature." *See id.* § 3D1.2.

**[14]** Turning to section 3D1.2(b), Espinoza-Baza's separate violations of 8 U.S.C. § 1326 may have shared the same victim (the societal interest harmed), but they were not "connected by a common criminal objective," and they were not "part of a common scheme or plan." In a nearly identical case, the Seventh Circuit concluded that multiple illegal entry counts typically do not qualify for grouping under the guidelines. *United States v. Bahena-Guifarro*, 324 F.3d 560, 564 (7th Cir. 2003). In *Bahena-Guifarro*, the court explained that the defendant's illegal entries were not connected to a common objective or scheme because the defendant's conduct simply consisted of " 'single episodes of criminal behavior, each satisfying an individual—albeit identical—goal.' " *Id.* at 565, *quoting United States v. Pitts*, 176 F.3d 239, 245 (4th Cir. 1999). Comparing an illegal reentrant to a prisoner that attempts to escape from prison on multiple occasions, the Seventh Circuit observed: "Although the defendant who escapes engages in the same type of conduct each time and harms the same societal interest each time, each escape is a separate and distinct offense that may not be grouped. So too with illegal reentry." *Id.* at 564 (internal citation omitted).

**[15]** We are persuaded by the Seventh Circuit's analysis, and it is consistent with section 3D1.2(b). The commentary to that section provides:

> [C]ounts that are part of a single course of conduct with a single criminal objective and represent essentially *one composite harm* to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times. This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm).

U.S.S.G. § 3D1.2 n.4 (emphasis added). The examples in the commentary provide further guidance. Grouping, for instance, is proper when a defendant is convicted on multiple counts for auto theft and for altering the vehicle identification number of the stolen car. *Id.* As with robbery, however, grouping is unavailable when a defendant is convicted on two counts of raping the same person on different days. *Id.* Although the offender may have the same objective each time he rapes his victim, his separate acts on different occasions cannot be deemed "connected" for purposes of section 3D1.2(b) because each act involves a discrete harm to the victim. *See id.*

**[16]** The same rationale applies to Espinoza-Baza's 2002 and 2005 illegal reentry offenses. According to Espinoza-Baza, he acted pursuant to a single criminal objective—an "overpowering desire to continue living" illegally in the United States with his family. But while we sympathize with his desire to live in close proximity to his family, Espinoza-Baza's conduct simply does not qualify for grouping under section 3D1.2(b). Although Espinoza-Baza had the same purpose for reentering the United States multiple times, his offenses did not represent "essentially one composite harm."

*See* U.S.S.G. § 3D1.2 n.4. Instead, like the criminal that robs the same victim on different occasions with an identical objective each time, Espinoza-Baza's multiple reentries over the course of three years "constitute[ ] single episodes of criminal behavior, each satisfying an individual—albeit identical—goal." *Bahena-Guifarro*, 324 F.3d at 565 (internal quotation marks omitted). The district court therefore did not err by upwardly adjusting Espinoza-Baza's sentence pursuant to a multiple count enhancement.

## B.

Finally, we turn to Espinoza-Baza's argument that his sentence is substantively unreasonable. In evaluating substantive reasonableness, we consider the totality of the circumstances and presume neither that a non-guidelines sentence is unreasonable nor that a within-guidelines sentence is reasonable. *Carty*, 520 F.3d at 993. "When a district judge has considered the § 3553(a) factors and the totality of the circumstances supports the sentence, we have held that the sentence is substantively reasonable and that we may not reverse just because we think a different sentence is appropriate." *United States v. Blinkinsop*, 606 F.3d 1110, 1116 (9th Cir. 2010) (internal quotation marks and alteration omitted). "Regardless of whether the sentence imposed is inside or outside the Guidelines range," we are required to "review the sentence under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51.

**[17]** After correctly calculating the non-binding guideline range to be 100 to 125 months' imprisonment, the district court granted a downward variance and imposed a below-guidelines sentence of 96 months. Although Espinoza-Baza contends that this term of imprisonment is still too high, we conclude from the totality of the circumstances that the district court did not abuse its discretion. *See Blinkinsop*, 606 F.3d at 1116. As the district court observed, Espinoza-Baza's criminal history includes multiple drug-related offenses, an assault with a deadly weapon, a disturbing the peace viola-

tion, and a conviction for evading a peace officer. Given the severity and escalating nature of Espinoza-Baza's criminal behavior, the district court did not abuse its discretion when it concluded that a ninety-six month sentence was necessary to deter criminal conduct and to protect the public from further crime. *See United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005) ("[W]hat we must decide is whether the district judge imposed the sentence he or she did for reasons that are logical and consistent with the factors set forth in section 3553(a)").

**[18]** We also disagree with Espinoza-Baza's contention that his below-guidelines sentence subjects him to an unwarranted sentencing disparity. Although Espinoza-Baza's sentence is higher than the majority of defendants convicted of illegal reentry after deportation, this alone is insufficient to establish that his sentence is unreasonable. *See* 18 U.S.C. § 3553(a). It does not "matter for the purposes of § 3553(a) that [Espinoza-Baza] can point to [other] criminal defendant[s] . . . who may have received . . . lighter sentence[s]" under materially different circumstances. *See United States v. Treadwell*, 593 F.3d 990, 1012 (9th Cir. 2010). There is nothing in the record suggesting that these other defendants had comparable criminal histories to Espinoza-Baza, that they were aggravated felons, or that they had illegally reentered the United States on multiple occasions. *See id.* Accordingly, under the circumstances of this case, we conclude that Espinoza-Baza's sentence was both procedurally and substantively reasonable.

**AFFIRMED.**