FILED
United States Court of Appeals
Tenth Circuit

February 28, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HECTOR SALAZAR-SALAZAR,

Defendant - Appellant.

No. 12-6217
(W.D. Oklahoma)
(D.C. No. 5:11-CR-00244-D-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant, Hector Salazar-Salazar, appeals the sentence imposed following his plea of guilty to illegal reentry following deportation after

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a). Finding the sentence procedurally and substantively reasonable, we affirm.

## BACKGROUND

Mr. Salazar, a citizen of Mexico, first entered the United States illegally in 1998. In April of 2000, using the alias of Carlos Pondura, Mr. Salazar pled guilty to shooting with intent to kill after he shot a person in the upper left chest area. He was sentenced to ten years' imprisonment, and, on November 5, 2004, he was released from prison and deported to Mexico.

Mr. Salazar illegally reentered the United States in February of 2005. In 2006 and 2007, Mr. Salazar was convicted of several domestic violence incidents, for which he received suspended sentences for two of the convictions and spent five months in jail on another conviction. On October 18, 2008, Mr. Salazar was arrested after fleeing on foot from officers who had tried to stop his car for speeding. He was charged with eluding a police officer and driving without a license. On November 13, 2008, Mr. Salazar pled guilty and received a one-year suspended sentence. Finally, on March 23, 2009, Mr. Salazar was charged for the instant offense, in which he arranged to sell methamphetamine from his house to an individual who turned out to be an undercover agent. As a result of this, he was sentenced to twelve years in Oklahoma prison for trafficking in illegal drugs, in violation of Oklahoma law.

In December 2009, an Immigration and Customs Enforcement ("ICE") agent was conducting routine interviews of foreign-born inmates at the Oklahoma Department of Corrections ("ODOC"). Mr. Salazar apparently admitted he was present in the United States illegally and that he had reentered the country after being previously deported. The ICE agent then placed an immigration detainer on Mr. Salazar with the ODOC.

The ICE agent subsequently submitted Mr. Salazar's fingerprints to the Department of Justice's identification system and confirmed that Mr. Salazar had previously been deported and was illegally in the United States. On July 20, 2011, Mr. Salazar was indicted for the instant offense, and he pled guilty on October 5, 2011.

In preparation for sentencing under the advisory United States Sentencing Commission, Guidelines Manual ("USSG"), the United States Probation Department prepared a presentence report ("PSR"). The PSR recommended a base offense level of 8, pursuant to USSG §2L1.2, to which it recommended a 16-level increase because of Mr. Salazar's 2000 conviction for shooting with intent to kill. See USSG §2L1.2(b)(1)(A)(ii). After a 3-point reduction for acceptance of responsibility, Mr. Salazar's total offense level was 21.

Mr. Salazar's criminal history category provides one of his arguments on appeal. The PSR initially calculated Mr. Salazar's criminal history points as 11 (criminal history category V), but then it added 2 points, pursuant to USSG

§4A1.1(d), because he was serving a prison term while the instant offense was committed, which resulted in a total history points score of 13.[1]  This placed Mr. Salazar in a criminal history category of VI, which yielded an advisory Guidelines range of 77 to 96 months' imprisonment.

Mr. Salazar objected to the addition of the 2 criminal history points, claiming that his offense of illegal reentry was "complete" prior to his incarceration for drug trafficking, because law enforcement authorities could have "found" him in the United States, prior to that incarceration.  The district court overruled that objection and found that Mr. Salazar's criminal history points had been properly calculated.

Mr. Salazar also filed a sentencing memorandum, in which he sought a sentence below the advisory Guidelines range, to run concurrent with his state sentence.  He again objected to the 2-point criminal history boost and urged the district court to impose a below-Guidelines sentence because of the government's delay in bringing immigration charges against him.  After considering his arguments and explicitly referring to the 18 U.S.C. 3553(a) factors, the district

---

[1]As will be explained further, we have ruled that the crime of "being" an illegal alien in the United States is a continuing offense that begins when the defendant illegally reenters the United States and does not conclude until he is "found."  See United States v. Villarreal-Ortiz, 553 F.3d 1326, 1330 (10th Cir. 2009).  In this case, Mr. Salazar was "found" while in the ODOC custody following his drug trafficking conviction.

court imposed a within-Guidelines sentence of 84 months' imprisonment, to run consecutively to his state sentence for drug trafficking. This appeal followed.

## DISCUSSION

Mr. Salazar argues on appeal that: (1) the district court erred in adding 2 criminal history points under USSG §4A1.1(d) on the ground that he committed the instant offense while serving a term of imprisonment; and (2) the 84-month sentence imposed, to run consecutively to his state sentence, was substantively unreasonable.

We review sentences for reasonableness under a deferential abuse-of-discretion standard. See United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1214 (10th Cir. 2008). "'Reasonableness review is a two-step process comprising a procedural and a substantive component.'" Id. (quoting United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir. 2008)). See Gall v. United States, 552 U.S. 38, 51 (2007). "Procedural review asks whether the sentencing court committed any error in calculating or explaining the sentence." Alapizco-Valenzuela, 546 F.3d at 1214. Substantive review, on the other hand, "involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007). A within-Guidelines sentence is entitled to a presumption of substantive reasonableness on appeal, and a

defendant must rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a). Rita v. United States, 551 U.S. 338, 347 (2007); United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006).

## I. Criminal History Calculation

Mr. Salazar's first argument relates to the procedural reasonableness of the sentence: "[i]n general, a procedural challenge relates to the 'method by which the sentence is calculated.'" United States v. Lente, 647 F.3d 1021, 1030 (10th Cir. 2011) (quoting United States v. Wittig, 528 F.3d 1280, 1284 (10th Cir. 2008)). "'When evaluating the district court's interpretation and application of the Sentencing Guidelines, we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts.'" United States v. Mollner, 643 F.3d 713, 714 (10th Cir. 2011) (quoting United States v. Munoz-Tello, 531 F.3d 1174, 1181 (10th Cir. 2008) (further quotation omitted)).

As indicated above, USSG §4A1.1(d) advises the addition of 2 criminal history points "if the defendant committed the instant offense while under any criminal justice sentence." Mr. Salazar claims "the government could have discovered that he was illegally present in the United States before his incarceration date[,]] and, therefore, his crime was committed before he started

serving his state drug trafficking sentence. Appellant's Br. at 10-11. As we have stated, "the crime of being 'found' in the United States is a continuing offense." United States v. Villarreal-Ortiz, 553 F.3d 1326, 1330 (10th Cir. 2009) (per curiam). Further, "[a] defendant is 'found' . . . when the government knows, or could have known through the exercise of diligence typical of law enforcement, (1) [that] the defendant is a prior deportee, (2) [that] the defendant is illegally present in the United States (i.e., the defendant is an illegal alien), and (3) the defendant's whereabouts." Id. (citing United States v. Ruiz-Gea, 340 F.3d 1181, 1189 (10th Cir. 2003)); see also United States v. Bencomo-Castillo, 176 F.3d 1300, 1303 (10th Cir. 1999). Mr. Salazar argues that law enforcement could have "found" him if they were diligent, because they knew where he lived prior to his state conviction, inasmuch as they set up a controlled buy at his house.

As the government points out, the problem with that argument is there is no evidence that the undercover officers involved in the controlled buy had any idea Mr. Salazar was an illegal alien. Furthermore, they were neither federal officers nor immigration officials. "[C]ourts have routinely held that an alien is 'found in' the United States only when *federal*, not state, immigration officials become aware of the alien's presence and illegal status." United States v. Uribe-Rios, 558 F.3d 347, 353 (4th Cir. 2009) (citing cases); see also United States v. Clarke, 312 F.3d 1343, 1348 (11th Cir. 2002). Thus, "courts have uniformly declined to find that state officials' knowledge of an alien's illegal presence in the United States

may be imputed to federal immigration authorities[.]" Uribe-Rios, 558 F.3d at 355.

Our court has implicitly held as much. See Villarreal-Ortiz, 553 F.3d at 1329-30 (affirming addition of 2 criminal history points where defendant was not found until immigration authorities found him); United States v. Hernandez-Noriega, 544 F.3d 1141, 1143 (10th Cir. 2008) (affirming addition of 2 criminal history points when immigration officials found defendant in state prison); Bencomo-Castillo, 176 F.3d at 1303-04 (holding defendant not found until INS agents identified him); United States v. Rosales-Garay, 283 F.3d 1200, 1201 (10th Cir. 2002) (same).

Accordingly, whether we determine Mr. Salazar was "found" when ICE agents initially interviewed him or when they confirmed his identity and status as previously deported following an aggravated felony conviction, Mr. Salazar was serving his state sentence at the time. The district court therefore did not err in adding 2 criminal history points to Mr. Salazar's criminal history calculation.

## II.  Substantive Reasonableness of Sentence

As we indicated before, a sentence "imposed within the properly calculated advisory range is entitled to a rebuttable presumption of reasonableness." United States v. Koufos, 666 F.3d 1243, 1254 (10th Cir. 2011), cert. denied, 132 S. Ct. 2787 (2012). Substantive reasonableness "focuses on whether the length of the

sentence is reasonable in light of the factors contained in 18 U.S.C. § 3553(a)."

United States v. Halliday, 665 F.3d 1219, 1222 (10th Cir. 2011).  Thus, the

defendant may rebut the presumption of reasonableness by showing that the

sentence is unreasonable in light of the § 3553(a) sentencing factors.  Mr. Salazar

has failed to do so.  We have stated:

> [T]o win a substantive reasonableness appeal is no easy thing.  The
> Supreme Court has told us, repeatedly now, that a district court's
> sentencing decision should be upheld in the face of substantive
> challenges unless the defendant can show the sentence issued falls
> outside the realm of the rationally available sentencing choices
> available to the district court after conducting a procedurally proper
> inquiry.  Flatly claiming that a sentence is too long does not meet
> this onerous standard.

United States v. Rendon-Alamo, 621 F.3d 1307, 1310 n.1 (10th Cir. 2010).

The district court explicitly invoked the § 3553(a) sentencing factors;

nothing more is required.  United States v. Cordova, 461 F.3d 1184, 1189 (10th

Cir. 2006) ("The sentencing court . . . 'is not required to consider individually

each factor listed in § 3553(a),' nor is it required to 'recite any magic words to

show us that it fulfilled its responsibility to be mindful of the factors that

Congress has instructed it to consider' before issuing a sentence." (quoting United

States v. Rodriguez-Quintanilla, 442 F.3d 1254, 1258-59 (10th Cir. 2006))).

Mr. Salazar also argues his sentence is unreasonable because his federal

sentence is to be served consecutively to his state sentence.  He similarly argues

that the government's delay in prosecuting him "resulted in a missed opportunity

for [him] to serve part of his state sentence concurrent with his federal sentence. . . . [T]he 19-month delay takes his case out of the heartland and [warrants] a downward departure or variance." Appellant's Br. at 13-14.

In making this "heartland" argument, Mr. Salazar relies upon two cases from other circuits, decided prior to the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which modified appellate review of sentences and reinforced the deferential abuse-of-discretion standard for reviewing district court sentences. They do not provide any authority which we must follow.

Furthermore, the district court in this case addressed and rejected Mr. Salazar's argument for concurrent sentences:

> In addition to the facts that bear on the discovery and processing of the defendant while in state custody, the defendant's criminal history is significant, including a range of offenses such as violent domestic assault, shooting with intent to kill, and drug trafficking. And in this way, the defendant has demonstrated that he should received the full impact of both his state and federal sentences.

Tr. of Sentencing H'rg at 10. Additionally, as the government argues, both statutory law and the advisory Guidelines contemplate that a federal sentence should be imposed consecutive to an unrelated state sentence previously imposed. See 18 U.S.C. § 3584(b); USSG §5G1.3(a). In any event, Mr. Salazar has failed to rebut the presumption of reasonableness which attaches to his sentence.

**CONCLUSION**

For the foregoing reasons, the sentence in this case is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge